## EUREKA SPRINGS RY. V. TIMMONS.

1. RAILROAD COMPANIES: *Liability as common carriers.*

The defendant is a corporation organized under the laws of this State, and the plaintiff while a passenger on its train was injured by an accident which occurred in the State of Missouri, on a connecting road over which the defendant was then operating its trains and which belonged to another corporation organized and existing there. *Held:* That by the common law—which in the absence of proof to the contrary is presumed to be in force in Missouri—the defendant, as a common carrier, is liable for the injury if sustained through its negligence.

2. SAME: *Evidence of negligence.*

The fact that a car leaves the track is *prima facie* evidence of negligence on the part of the company.

3. SAME: *Bound to utmost diligence.*

Passenger carriers by railway are bound to the utmost diligence which human skill and foresight can effect, and if an injury occurs, by means of the slightest omission in regard to the highest perfection of all the appliances of transportation, or the mode of management at the time the injury occurs, the carrier is responsible. *George v. St. L., I. M. & S. Ry. Co.,* 34 Ark., 613.

APPEAL from *Carroll* Circuit Court.

J. M. PITTMAN, Judge.

*Crump & Watkins,* for appellant.

1. The injury occurred on the road of a Missouri corporation which had no legal existence in Arkansas. 16 How. U. S., 325; 13 Pet., 519; 13 Wall., 270. This company is not liable for an injury occurring on another road. Wood & Field on Corp. 2nd ed., sec. 326.

2. The damages are excessive. The verdict an outrage. 46 Ark., 275; 25 Id., —; 39 Id., 387.

3. It was error to instruct the jury that defendant must show * * * that its track and machinery and appliances were the best of the kind and in *perfect* condition, etc. 34 Ark., 613; 40 Id., 298; 2 Rorer on R. R., 948; Sackett

on Inst. to Juries, 266; Hutchinson on Car., sec. 502; 14 How. U. S., 486; 16 How. U. S., 469; 17 Wall., 357; 3 Otto., 291.

The appellee, *pro se.*

1. Appellant does not deny that it *operates* said road and runs its cars to Seligman, Mo. The action is transitory and could be brought in Arkansas. Rorer on R. R., vol. 1, p. 677; 2 Id., p. 1113.

2. The verdict is sustained by evidence and this court will not reverse. 25 Ark., 474. The fact that the car left the track is *prima facie* negligence. 40 Ark., 321; Rorer on R. R., 1066; 68 Mo., 340.

3. Instruction No. 1, for plaintiff is law. 34 Ark., 613.

4. The instruction to the jury that the road, machinery, etc., must be "the *best of the kind and in perfect condition*" is not unreasonable. It is quite different from saying that the appliances, etc., must be *perfect.* See 2 Rorer on R. R., 1050, 1088–9; Lawson Car. Pass., 16.

HUGHES, J.

While a passenger in one of the coaches on the railway of appellant *en route* from Seligman, Missouri, to Eureka Springs, Arkansas, appellee received personal injuries, by the coach in which he was seated leaving the track of the road, and turning over down an embankment. The complaint alleges that the appellant was, at the time, operating its road from Eureka Springs, Arkansas, to Seligman, Missouri, and that appellant was guilty of negligence in using defective machinery and in operating its road, which was the cause of appellee's injury. Appellant denied negligence; denied that appellee was injured, and denied that one of its coaches was thrown from the track; and alleged that that

part of said railroad from the Missouri line to Seligman, Missouri, was owned by the Missouri and Arkansas Railway Company, a corporation organized and existing under the laws of Missouri; but did not deny that it was *operated* by the Eureka Springs Railway Co. (the appellant). There was evidence tending to show that the train consisted of a combination car, passenger coach and engine, and was going down a steep grade, at the rate of 15 or 16 miles an hour, or over; that the rear car jumped the track, ran some three or four hundred feet, came uncoupled and turned over down a steep embankment; that the appellee was in this car; that the car ran off the track within one and a half or two miles of Seligman; that there was at the time no brakeman on the rear car; that appellee was injured in the hand, arm, thumb and leg. Some of the witnesses testified that the train at the time the car ran off the track was running 25 or 30 miles an hour. Edward Church, the engineer in charge of the train, testified that he examined the air brakes and machinery before he left Seligman, and just before the accident occurred, and that they were in good condition; that just before the car turned over he received a signal to stop and applied the air brakes, and about this time received a signal to go, and then he attempted to release the brakes and could not do it; that he could not see the rear car, but that his fireman said that it was off the track, and then he reversed the engine and stopped the train, and that, as the train stopped, the rear car came uncoupled and turned over on its side. He testified that "the train ran about 150 feet with a wheel off the track before I received the first signal. After receiving the first signal we ran about 150 feet, when the train stopped." States, "there were two brakemen on the train that day;" that the position of one was at the front end of the combina-

tion car, and of the other on the rear end of the train. That the duty of the brakeman on the passenger train is to take up slack of brakes and see that the couplings are secure at all times and to receive any signals from the engineer, and in case of accident to apply brakes; that it is a fact that these brakemen can stop the cars, when the air brakes fail to work for the engineer; that it is about 150 feet from where the wheel left the track to where the engineer got the first signal; that immediately there were two taps of the gong, which meant go on. "When I attempted to release the brakes I detected there was something wrong with the brakes, that the air wouldn't release freely, when I told the fireman to look out and see what was the matter, and he said that the rear car was off the track and at that time the rear car had not turned over, and I immediately reversed the engine." "The bell rope was working properly before up to the time of the stopping of the car." "Successive ringing of the bell about half a minute before the train stopped." Powell Clayton testified that the "rails are steel rails of the very best order, the track is an unusually good one. The track on the day of the accident was in excellent condition. The machinery was of the best and improved kind." That he "examined track; it was in perfect condition. If train had been running 25 or 30 miles an hour, it could not have been stopped in distance it was. From where truck got on rail to where car turned over was about 400 feet, and certainly not 500 feet. It would not attract attention so long as truck was on the rail; it ran on rail about 30 feet." Also, that "in case of an accident car conductor should either ring the bell for brakes, or run to water closet and apply air brakes himself." J. B. Obenchain testified, "examined air brakes on coach that came in after accident and they were all right.

Perhaps at speed they were running, if cars were on track would stop at 150 feet. If truck was off rail, can't say how long it would take, (that is, supposing the train to be constructed as it was.)" "The stopping of train at distance I have mentioned depends upon whether everything was quiet and no confusion, and there was prompt action." He also testified that he was the master mechanic for the company, and that his duty was to look after and keep up machinery; that he examined the wheels and boxes on morning before the accident; that there was no defect in the machinery save after the accident; one wheel was out of shape; could not discover any defect in rail. It must have gone 140 or 150 feet, from where it ran off. "Train running on that grade at 15 miles an hour, if heavily loaded, must run 160 or 170 feet before it could be stopped. It is owing to the load. If it was running 25 or 30 miles an hour it would perhaps run 200 or 250 yards before it could be stopped. I can give no explanation of why accident occurred, or the cause of it; road was in good condition, car had been to Pierce City after I examined it; can't say when the wheel got out of shape. The fact of wheel running over track and ties would likely have damaged the wheel." This was substantially the evidence.

The court at the request of the plaintiff instructed the jury that: "If the defendant undertook to carry the plaintiff outside of their charter authority, or by a different conveyance, or time of conveyance, the defendant would be liable as a common carrier, for such injuries as are sustained by the plaintiff through defendant's negligence." 2nd. "That the running of a passenger train of cars off the track is *prima facie* evidence of negligence, either as to the condition and care of the track, and careful running of the train, and if

proven it shifts the burden of proof on to the company to show a proper construction and condition of the track and careful running of the train, or such facts, if any, as will excuse it from liability.''

3rd. ''If the jury find for the plaintiff they will take into consideration in assessing his damages, his mental and bodily pain and anguish, his incapacity to labor, and the permanency of his injuries, if such elements of damage be shown by the proof.''

4th. ''If the plaintiff shows *prima facie* negligence on the part of the defendant, then before defendant can excuse itself, it must show by a preponderance of the testimony that its track and machinery and appliances were the best of the kind and in perfect condition, and that the servants of the defendant used proper care in the running of the train, and after they had notice of an imperiling accident, that they used every effort in their power to avoid it.'' To the giving of instructions three and four for plaintiff, defendant excepted. At defendant's request the court gave the following instructions:

1. ''The court instructs the jury that it is the duty of all railroad companies to use all reasonable means and efforts to furnish good and well-constructed machinery, adapted to the purpose of its use, of good material, and of a kind that is found to be the safest when applied to use; and if you find that defendant used these means, and that the accident occurred by reason of a defect in the machinery of the said defendant, which they, by the exercise of all reasonable care and skill could not detect, then you will find for the defendant.''

2. ''If you find from the evidence that the defendant had used all the proper means in its power to furnish the proper

track, and the best and most approved material and appliances for the carrying of passengers, and you further find from the evidence that the injury was caused by some unavoidable accident, not the fault of the defendant, then you will find for the defendant.''

Defendant then asked the court to instruct the jury as follows:

3. ''That before you can find for the plaintiff for an injury which occurred to him in the State of Missouri, you must find by a preponderance of the evidence that defendant had either bought or leased said road, running in the State of Missouri, or that it had legally consolidated with its road, which was a corporation under the laws of the State of Arkansas.''

4. ''I charge *that* the plaintiff has alleged that the road where the injury to him occurred was a corporation under the laws of the State of Arkansas, that this is denied by the defendant, that the burden of proving this fact by a preponderance of evidence is on the plaintiff, and that before you can find for him, you must find that the defendant had bought or leased said road running where the injury occurred, or that it had been legally consolidated into the road which is a corporation in the State of Arkansas.''

The court refused to give instructions Nos. 3 and 4, and defendant at the time excepted. The jury found for the plaintiff and assessed damages at $1,000; defendant filed a motion for a new trial, and set up—

1st. ''That the verdict is contrary to the evidence.''

2nd. ''That the verdict is contrary to law and that the verdict is contrary to both the law and evidence.''

3rd. ''Because the court erred in refusing to give instructions Nos. 3 and 4 asked for by defendant against objection

Vol. LI.—30

of defendant, and in giving instructions 3 and 4 asked for by the plaintiff over objection of defendant.''

4th. ''Because the damages given by the jury are excessive, unreasonable and were given under passion and prejudice.''

The court overruled the motion for a new trial, defendant excepted and appealed to this court.

I. RAILROAD COMPANIES: Liability as common carriers. I. The appellants counsel insist that the injury, if any, was received in the State of Missouri on the Missouri and Arkansas Railway, which is a corporation existing in said State, and organized under its laws, and that no action will lie in Arkansas, unless it be shown, first, that the Eureka Springs Railway Company had purchased or leased the road owned by the Missouri corporation, or that said road had been legally consolidated with the Arkansas road as provided in secs. 5511, 5516, Mansfield's Digest; and cites authorities to show that a corporation can exist only in the state of its creation. The complaint alleges, however, and the answer does not deny that the Eureka Springs Railway Company was *operating* its trains over the other road at the time the accident occurred and, therefore, if the evidence warrants, the company is liable at common law, being at the time a common carrier. In the absence of proof to the contrary the courts of this State will presume the common law to be in force in Missouri. *Thorn v. Weatherly*, 50 Ark., 237, and cases cited. The appellant reasons with much force in urging his objection to the expression in the 4th instruction given for appellee that, ''before defendant can excuse itself, it must show by a preponderance of testimony, that its track and machinery and appliances were the best of the kind, and in perfect condition,'' objecting especially to the latter clause, ''and in perfect condition.'' Conceding that

Railway v. Rice.

this would be objectionable without qualification, yet it is qualified by instructions one and two given for the defendant (appellant), which correctly charged the law.

II. The car leaving the track was *prima facie* evidence of negligence. This presumption may be rebutted by showing that the injury arose from an unavoidable accident, or an occurrence which could not have been prevented by the utmost skill, foresight and diligence. Railways are not insurers of passengers, but passenger carriers by railway are bound to the utmost diligence which human skill and foresight can effect, and if an injury occurs, by reason of the slightest omission in regard to the highest perfection of all the appliances of transportation, or the mode of management at the time the damage occurs, the carrier is responsible. *George v. St. L., I. M. & S. Ry. Co.*, 34 Ark., 613; *L. R. & Ft. S. Ry. v. Miles*, 40 Ark., 298, and cases cited. It was within the province of the jury to determine the facts, and it is a settled principle of law, that where there is any evidence to support a verdict a judgment will not be reversed upon the evidence.

Finding no substantial error the judgment is affirmed.