## ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY *v.* BROWN.

### Opinion delivered April 11, 1896.

TRIAL—OBJECTION TO EVIDENCE.—An exception to the admission of evidence is waived where the question of its admissibility was taken under advisement by the court, and never finally disposed, nor subsequently called to the court's attention by a motion to exclude the evidence.

EVIDENCE — OPINION OF NON-EXPERT. — A witness who is not an expert as to the speed of a train may testify his opinion as to the distance from the station which a train had gone before stopping on a particular occasion, although, on account of darkness, he was unable to observe external objects.

CARRIER—EXPULSION OF PASSENGER.—An expulsion of a passenger from a train in a rude, insulting, or rough manner renders the company liable for damages, although her expulsion in a proper manner was authorized because her ticket, being unstamped and unsigned, did not entitle her to carriage, and she refused to pay her fare.

EVIDENCE—PROOF OF BAD TEMPER.—Evidence that a conductor was in bad temper when he re-entered the coach after ejecting a passenger therefrom is admissible in corroboration of testimony tending to show that the passenger was ejected in a rude, insulting, or rough manner.

CONFLICT OF LAWS—ACTION BASED ON STATUTE OF ANOTHER STATE. —A non-resident may sue a domestic corporation in the courts of this state on a transitory cause of action arising under a statute of another state, where such statute does not conflict with the public policy of this state; and the fact that there is a similar statute in this state is evidence that the statute in question is not against public policy.

Appeal from Sebastian Circuit Court, Fort Smith District.

EDGAR E. BRYANT, Judge.

*L. F. Parker* and *B. R. Davidson*, for appellant.

1. The plea to the jurisdiction should have been sustained. It is against public policy to allow such

suits to be maintained at a point so far from where the acts are alleged to have occurred, and between residents of other jurisdictions. 2 N. Y. Sup. 524; Black, Const. Law, p. 222; 127 U. S. 706; 14 S. W. 228; 98 Mass. 65. It is the settled policy of our law and of Missouri that suits shall be brought where the defendants reside. Mansf. Dig., secs. 5007–9, 4029, 5003; 38 Ark. 205; Dig. Stat. Mo., vol. 2, p. 1454, secs. 6126, 2009; 80 Mo. 634; 55 Ark. 282.

2. It was error to allow Humphreys' opinion in evidence. He was not an expert. 61 Wis. 357; 19 Am. & Eng. Ry. Cases, 74, 79; 58 Fed. 947–8.

3. There was no cause of action, under the Missouri statute, for ejecting at a wrong place. 64 Mo. 465; 77 *id.* 663; 53 *id.* 320; 50 Fed. 496–501; 127 U. S. 390. The plea in abatement should have been sustained. 2 N. Y. Sup. 524; 14 S. W. 228; 19 Mich. 305–315; 8 Bissell, 31.

4. It was error to admit statements of the conductor as part of the *res gestæ* 11 Am. & Eng. Ry. Cases, 85–89.

5. Evidence that plaintiff had rheumatism before and after the occurrence was not admissible. 56 Fed. 994.

*Rogers & Oglesby*, for appellee.

1. Where a right accrues by virtue of a statute of any state, the action may be maintained in any other state, if not contrary to public policy of the place where brought, such actions being transitory. 31 Minn. 11; 103 U. S. 11; 65 Ia. 729; 60 Miss. 977; 63 Ia. 70; 8 Baxt. (Tenn.), 341; 19 Mich. 305; 51 Ark. 459; 84 N. Y. 48; 145 U. S. 593; 17 Wend. 323; 20 S. W. 819.

2. The testimony of Humphreys was competent. Questions of time, distance, etc., are matters of common knowledge. 41 Vt. 99. And what the conductor said

was admissible as part of the *res gestæ*, and to show
his temper and frame of mind.  20 Ark. 225.  The
testimony as to plaintiff's rheumatism was not admitted,
but excluded.

3.  This is a case of conflict of testimony, and the
jury believed the plaintiff's theory to be true.  This
court will not disturb the finding.  46 Ark. 149; 51 *id.*
476; *ib.* 475; 147 U. S. 150; 23 U. S. App. 349.

BUNN, C. J.   This suit was instituted in the
Sebastian circuit court, Fort Smith district, and, having
progressed to a certain point, plaintiff, Drura Brown,
suffered  judgment  of  nonsuit,  and  subsequently
renewed the suit against the defendant company, which
resulted in judgment in her favor in the sum of three
hundred and seventy-five dollars, and the defendant com-
pany appealed to this court.

The plaintiff, Drura Brown, and her husband,
referred to in the record as Dr. Brown, resided at Vinita,
in the Indian Territory, and only a short distance from
the city of Fort Smith; and on 22d December, 1892, each
purchased at Fort Smith, from defendant's agent, a
round-trip ticket over its railroad and connecting lines to
and from Memphis, Tennessee.  This ticket was condi-
tional to the extent that it was stipulated thereon that
the holder thereof, in order to make the return part good,
should identify herself or himself, as the case might be,
by signing her or his name, and having the ticket
stamped by the agent of the company, at a point named
between the punch marks thereon made.

Plaintiff and her husband were on their return, and,
by the connecting railway, reached defendant's road at
Nichols, in Green county, in the state of Missouri, with-
out having her ticket signed as aforesaid, and stamped
by an agent of the connecting road over which she had
traveled on her said return.  From Nichols station,
defendant's road runs south to the Arkansas line, thence

through the counties of Benton, Washington, Crawford and Sebastian in this state, and thence southerly, through the Indian Territory, to the city of Paris, in the state of Texas. Plaintiff and her husband boarded one of the coaches of defendant's passenger train going south, at Nichols station, sometime before daylight on the 1st day of January, 1893; and, having gone a short distance (about which the evidence is conflicting), the conductor demanded, and was shown, plaintiff's said ticket, and, observing that the same had not been signed and stamped as required, informed plaintiff that it was worthless, and, after some conversation with her, the nature of which is in dispute, informed plaintiff that she must get off at once, and immediately stopped the the train, and escorting her to the door and platform, followed by her husband, caused her to alight from the steps of the coach to the ground, in a manner which is also in dispute. At the time it was very cold and dark, and there is testimony showing that the ground was covered with snow or sleet, or both. There is testimony tending to show that the trainmen who assisted her to alight from the train did so in a rude and rough manner, jerking her down, so that she was hurt and bruised, and also that the place on which she was thus caused to alight was an embankment or "dump," and sloped outward, and was difficult to stand upon under the circumstances. There was testimony just to the contrary of this, the plaintiff testifying the one way, and the trainmen the other, as to the place at which and the manner in which she was put off. There was evidence also pro and con as to the manner in which plaintiff was treated by the conductor from the time he examined the ticket until she was ejected from the coach, her evidence being to the effect that his manner, words, and actions toward her were rude, rough, and profane; and that on the part of defendant that they were just to the con-

trary. The witnesses on the part of plaintiff testified that the train had gone a mile and a half, more or less, from the depot; and those on the part of the defendant, that it had gone but a short distance from the depot, and where its lights were still in plain view. There was evidence that, by reason of the plaintiff's exposure to the inclemency of the weather, and by reason of her having to walk a long distance from the point where she was put off to the first house near the road, there being no house observable at or near the place at which she was put off the train, she contracted a severe cold, producing pneumonia; so that she was confined to her bed for a long period after she arrived at her home, and also that she suffered much from rheumatism produced by such exposure.

When objection to evidence waived.

The first contention we will notice is that which arose from the admission by the court of evidence to the effect that plaintiff had rheumatism sometime before she was put off the train and sometime afterwards. The testimony was not admissible, but the defendant contends that it was admitted, while the plaintiff contends that it was not admitted. The record shows that evidence to that effect was given, and that the defendant objected. The question was taken under advisement, but was never finally disposed of by the court, and seems to have been overlooked. We think defendant should have called the court's attention to it, and asked a ruling on its motion to exclude, and, failing to do so, waived its objection. More likely still, the evidence was never considered by the jury, as it seems to have been taken under advisement in their presence.

Admissibility of opinion of non-expert.

It was also objected by defendant, that the witness Humphreys, who was a passenger in the coach at the time, not having shown himself to be an expert judge of the time, speed, and distance at which trains may be running, or have run, on any given occasion, when the

circumstances are such that he cannot observe external objects, was incompetent to testify as to the distance the train had gone from the station to where it was stopped and the plaintiff put off. We do not think this objection is tenable. It may be true that people accustomed to travel much on trains, in the night as well as in the day time, as trainmen are accustomed to do, are better and more accurate judges of such matters than those who travel on trains only occasionally, as does the average passenger; and yet the difference is only in degree at last, and, the subject-matter being more or less of common knowledge, we cannot say that one is incompetent to testify because he is not an expert. His testimony may not be entitled to as much weight as that of the experienced man, but that is all that can be said against it, and that of course is a question for the jury.

It may and must be admitted that the unstamped ticket which plaintiff presented to the conductor in payment of her fare was, in its then shape, void, and did not authorize her to ride on the defendant's cars; and her tender of the same in payment of her fare, instead of money, may be considered as a refusal to pay her fare; and, therefore, that the conductor, under the provisions of the Missouri statute, had a right to put her and her baggage off the car, near any depot or dwelling house; and yet, in doing so, he should have used no more force than was necessary, and, irrespective of any particular statute, should not have ejected her in a rude, insulting, or rough manner. Whether this was done in this particular instance was also a matter for the consideration of the jury, from the evidence relating thereto. *Liability of carrier for rude expulsion of passenger.*

It is objected that the evidence adduced by the plaintiff to show the temper of the conductor on re-entering the coach after ejecting plaintiff should not have been admitted. We cannot see the reason in this objection. It was admissible in corroboration, however little *Admissibility of proof of conductor's bad temper.*

weight there should be given to such evidence, even if true.

Enforcement
of cause of
action based
on statute
of another
state.

The principal argument of defendant's counsel is devoted to its contention that, since plaintiff was a resi- dent of the Indian Territory, and since the injury was done in the state of Missouri, and since the case must be adjudicated according to the laws of the latter state, therefore it is contrary to the public policy of this state to lend the aid of her courts to settle the controversies of parties so situated, and thus the trial court was with- out jurisdiction.  On this particular subject, we cannot better express our views than by quoting from others. In the case of the *Chicago, St. Louis & New Orleans Railroad Company* v. *Doyle*, 60 Miss. 977, Chief Justice Campbell, in delivering the opinion of the court, said: "The right of action for damages for killing a husband, given by the statute of Tennessee, may be asserted in the courts of this state, because of the coincidence of the statutes on this point, and, independently of this, because a right of action created by the statute of another state, of a transitory nature, may be enforced here, when it does not conflict with the public policy of this state to permit its enforcement; and our statute is evidence that our policy is favorable to such rights of action, instead of being inimical to them,"—citing *Dennick* v. *Railroad Co.* 103 U. S. 11; *Nashville &c. R. Co* v. *Sprayberry*, 8 Bax- ter, 341; *Selma &c. Ry. Co.* v. *Lacey*, 49 Ga. 106; *Leonard* v. *Columbia &c. Co.* 84 N. Y. 48.  There is but a slight difference between the provisions of the statute of the state of Missouri, shown in evidence as governing this case, and those of the statute of this state on the same subject; and that difference is as to the nature of the place at which a passenger may be put off.  As was said in the Mississippi case, from which we quote above, our statute is evidence that our policy is favorable to rights of action for wrongs to persons of the nature of

those charged in this case.  We do not see, therefore, that any public policy of this state is contravened by the assumption of jurisdiction of this cause by the court below.

We append a list of authorities touching each phase of this question, or rather the reason of the rule from the different standpoints from which the question has been discussed.  The common law rule is that, where the right of action is transitory in its nature, courts everywhere, when the defendant may be lawfully summoned to appear therein, have jurisdiction; and, when the suit is governed by statute of the state in which the injury is committed, courts of another state, having similar laws, or where it is not contrary to its public policy, will enforce such laws, by the rule of comity. *Eureka Springs R. Co.* v. *Timmons*, 51 Ark. 459; *Boyce* v. *Ry. Co.*, 63 Ia. 70; *Morris* v. *R. I. & Pacific R. Co.* 65 *Ib.* 727; *Herrick* v. *M. & St. L. R. Co.*, 31 Minn. 11; *Tex. & Pacific R. Co.* v. *Cox*, 145 U. S. 593; *Wintuska* v. *L. & N. R. Co.*, 20 S. W. 819.

In some jurisdictions, action for torts committed in and governed by the laws of another state are purely matters of comity; and when it appears that the courts of one state are resorted to, to adjudicate upon mere personal torts committed abroad, between persons who are all residents where the tort was committed, the courts may decline to take jurisdiction.  *Great Western Railway Co. of Canada* v. *Miller*, 19 Mich. 305.

There does not appear to have been any objection to the instructions given, or because any were refused. The evidence sustained the verdict of the jury, and, seeing no substantial erorr in the action of the court, the judgment is affirmed.