ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* .BROWN.

Opinion delivered December 23, 1899.

1. PERSONAL ACTION—VENUE.—An action for a personal injury against a railroad company, being transitory, may, under Sand. & H. Dig., § 5692, be brought in any county in this state through or into which the road passes, though the cause of action arose in another state or territory, if both parties are domiciled in this state.   (Page 299.)

2. SAME—LAW GOVERNING.—In actions *ex delicto* for injuries to persons or property, the right to recover, and the limit of the amount of the judgment, are determined by the laws of the place where the injury was done.   (Page 301.)

3. JUDICIAL NOTICE—ACT OF CONGRESS.—The courts of this state will take judicial notice of the act of Congress extending the application of a specified part of the statutes of this state to the Indian Territory.   (Page 302.)

4. COMMON LAW—PRESUMPTION.—In the absence of evidence to the contrary, the common law is presumed to be in force in Kansas.   (Page 302.)

5. FELLOW SERVANTS—NEGLIGENCE.—A fireman on a locomotive engine and a switchman on the train attached are fellow servants at common law, within the rule which holds the master not liable for an injury to his servant caused by the negligence of a fellow servant engaged in the same business, provided there was no negligence in the employment of the latter or in his retention.   (Page 302.)

Appeal from Crawford Circuit Court.

JEPHTHA H. EVANS, Judge.

*Dodge & Johnson* and *Oscar L. Miles,* for appellant.

The court below had no jurisdiction over a cause of action arising in the Indian Territory. There is no such thing as comity except between equals. See Webst. Dict. *Comity.* Hence there can be no concurrent jurisdiction between the state court and the federal court for the Territory. 18 Wall. 317; 11 Otto, 129; 9 How. 238. The burden was on the appellee to show both that the accident was the result of negligence of the

master, and that it was not the result of a risk which he had impliedly assumed, as one of the usual and ordinary hazards of the business. Wood, Mast. & Serv. § 382; Thomp. Neg. 1053; Shearm. & Redf. Neg. § 99; 46 Ark. 569. The master's duty of inspection extends only to such. defects as are visible and open to ordinary observation, in the case of a foreign and loaded car offered for immediate transit. 22 C. C. A. 268; 116 U. S. 642; 135 Mass. 201; 100 N. Y. 462; 26 Pac. 297. Even if the injury was caused by negligence, it was the negligence of the car inspector, who was a fellow-servant of appellee. 109 U. S. 478; 46 Ark. 569; 51 Ark. 479. Plaintiff, having elected to bring his suit in Arkansas, is bound by the Arkansas rule upon this point. 16 Peters, 511; 12 Otto, 14; 17 Otto, 102. The injury having occurred while appellee was engaged in violating the rule of the company, his recovery is bound by his own contributory negligence. 90 Ala. 68; 55 Wis. 50; 90 Ala. 32; 106 Mo. 74; 40 Ia. 341; 16 S. W. 229; 80 Ga. 427; 110 Mo. 387; 38 W. Va. 206. The employee is presumed to have known of the general rules of his employment. 70 Tex. 226; 16 S. W. 229; 9 Am. & Eng. R. Cas. (N. S.) 759. The appellant discharged its duty to furnish safe instrumentalities, etc., so far as concerns this case, when it placed an adequate supply of links and pins on the train, in order that the ser-. vants might replace broken ones; and the presence of the defective link was due to the negligence of a fellow-servant. 27 N. E. 952; 139 Miss. 445; 109 N. Y. 496; 46 N. E. 624; 156 Mass. 13; 160 Mass. 152; *id.* 557; 135 Mass. 209.

*Geo. A. Grace*, for appellee.

This is a transitory action, and the court below had jurisdiction. 62 Ark. 254; 54 Ark. 459; 63 Ia. 70; 65 Ia. 727; 31 Minn. 11; 145 U. S. 593; 20 S. W. 819; 103 U. S. 11; 49 Ga. 106; 84 N. Y. 48; 60 Miss. 977; 50 Ark. 155. Appellant's duty of inspection was the same in regard to foreign cars as to its own. 56 Ark. 594, 602; 160 U. S. 70; 16 S. Car. 216; 157 U. S. 72, S. C. 15 Sup. Ct. Rep. 491; 100 N. Y. 462; 53 Am. Rep. 296; 116 N. Y. 401; 109 Ill. 314, 322, 325; 94 Mo. 468; 44 Am. & Eng. R. Cas. 523; 1 Shear. & Redf. § 196; 2 *id.* § 459; 9 Fed. 337.

The car inspector was not a fellow-servant of the fireman, by the law of the Indian Territory. 116 U. S. 642; 149 U. S. 368, S. C. 13 Sup. Ct. Reporter, 914; 150 U. S. 349; 152 U. S. 684; 58 Ark. 66, 78; 56 Fed. 1009; 70 Fed. 219; 76 Fed. 349, 352; 56 Fed. 994. The law of the place where the cause of action arose, and not the *lex fori*, controls. 160 Mass. 571; S. C. 39 Am. St. Rep. 514; 94 Wis. 70; 29 Kas. 632, S. C. 11 Am. & Eng. R. Cas. 243; 10 Lea, 35, S. C. 11 Am. & Eng. R. Cas. 180; 97 Ala. 126, S. C. 18 L. R. A. 433; 89 Tenn. 235; 61 Ia. 441; 27 S. Car. 456, S. C. 13 Am. St. Rep. 653; 12 Am. & Eng. Enc. Law (2 Ed.), 1018; 146 U. S. 657, S. C. 13 Sup. Ct. Rep. 224, 229; 1 How. 28; 7 Wall, 53, 64; 105 U. S. 24, 29; 103 U. S. 11; 145 U. S. 593, S. C. 12 Sup. Ct. Rep. 905. The question of contributory negligence was for the jury. 130 U. S. 649, S. C. 9 Sup. Ct. Rep. 647; Beach, Cont. Neg. § 450; 8 Allen, 441; 150 U. S. 349; 48 Ark. 333, 348; 30 Minn. 231; 92 Fed. 567; 54 Fed. 481, 483. It was for the jury to say whether the appellant, by the use of ordinary care, could have discovered the defect in the link. 53 Ia. 595, S. C. 35 Am. Rep. 243. The link was admissible in evidence. 62 Ark. 538; 138 Ill. 103, 108, 110, S. C. 27 N. E. 1085; 3 Am. St. Rep. 448, 449.

BATTLE, J. William M. Brown instituted this action against the St. Louis, Iron Mountain & Southern Railway Company, in the Crawford circuit court, to recover damages caused by injuries received by him in the Indian Territory. The plaintiff recovered a judgment against the defendant for six thousand dollars. To set aside this judgment, the defendant prosecutes an appeal to this court.

The plaintiff alleged, in his complaint, that the defendant was a corporation, created and organized under the laws of the states of Missouri and Arkansas; that the Kansas & Arkansas Valley Railway Company was a corporation organized under the laws of this state; and that he (the plaintiff) was, on the 19th day of September, 1895, and long before and ever since that day, a white man, and a citizen of the United States, and of the State of Arkansas. He further alleged that sometime prior to the 19th of September, 1895, the St. Louis, Iron

Mountain & Southern Railway Company leased from the Kansas & Arkansas Valley Railway Company its railway, which extended from Coffeyville, in the state of Kansas, through the Indian Territory, and into Crawford county, in this state, to the town of Van Buren, and had maintained and operated the same at all times since the lease; that the plaintiff was in the employment of the former company as a fireman on the railway leased by it, and, while so engaged, on the 19th of September, 1895, at Ross station, in the Indian Territory, the defendant, by carelessly and negligently operating one of its trains on which he was working, threw him to the ground and injured him by running the wheel of the engine in the train over his right foot, to his great damage. The defendant answered and denied all allegations as to negligence, but said nothing as to the companies named being corporations, or the lease, or the plaintiff being a white man, and a citizen of this state.

The injury of which the plaintiff complained was received under the following circumstances: In 1890 the defendant employed plaintiff to labor as a fireman on one of its locomotives on the railway leased by it from the Kansas & Arkansas Railway Company. He was constantly engaged in the performance of this work until the 19th of September, 1895, when at Ross station, in the Indian Territory, the train of the defendant on the leased railway, on the engine of which he was serving as fireman, ran on a side track to allow a passenger train to pass. Two cars being already on the side track, the engine of the former train pushed them ahead of it until the train hauled by it was fully on the side track. After the passenger train had passed, the other train backed out on the main line, over the way it had come, and pulled the two cars, which it had pushed ahead of it, as it moved out. A brakeman made an effort to detach them (the two cars) from the engine by uncoupling, while the train was moving, but he failed to do so, and signalled to the engineer to stop, and he obeyed; and as he did so one of the links used in coupling the cars composing the train broke, and the train at this place of junction separated into two parts, and the part in the rear moved up the track. The

two cars were then separated from the engine, and the engineer moved the remainder of the train back. As he did so, plaintiff was sitting on the end of the pilot beam, cleaning out the engine from the front end. The two parts into which the train was divided collided. Plaintiff fell from the pilot beam, and a wheel of the engine ran across his right foot, taking off the great toe and the two next to it.

The defendant insists that the Crawford circuit court did not have the jurisdiction to hear and determine any cause of action based upon the injury of plaintiff, because the injury was done in the Indian Territory, and the United States court in that country had jurisdiction to try whatever cause of action accrued to him on account of it. But it is in error. Actions for personal injuries are transitory, and not local, and may be brought against railroad companies in any county where the law provides for suing them, and where service of summons can be effectively made. Under the statute of this state (Sand. & H. Dig., § 5692), an action against a railroad company for an injury to person or property upon the road of the defendant may be brought in any county through or into which the road upon which the cause of action arose passes. The road upon which the cause of action in this case arose passes into Crawford county, and the circuit court of that county, if the defendant was properly served with summons, had jurisdiction to try it; the cause of action being transitory, and the domicile of both parties being in this state. *Eureka Springs Ry. Co.* v. *Timmons*, 51 Ark. 459; *St. L. & S. F. Ry. Co.* v. *Brown*, 62 Ark. 254; *Bruce* v. *Cincinnati R. Co.*, 83 Ky. 174.

The right of plaintiff to recover in this action depends upon the liability of the defendant to pay damages on account of the breaking of the link which caused the separation of the train. Upon this part of the case the trial court instructed the jury, over the objections of the defendant, as follows: "It is the duty of the defendant to use reasonable care to provide and keep in reasonably safe condition for use by its employees the cars and appliances, including links used by them in its service. A violation of this duty is negligence. This duty is violated, so far as this case is concerned, only when a link is

used which is so defective as to be reasonably liable to break and cause injury; and defendant must have known this, or, if it did not know it, as an ordinarily prudent and careful person ought to have known it, and thereafter unreasonably failed and neglected to repair it or obviate the defect,—in such case, and in such case only, is there negligence of the defendant. If you find negligence on the part of the defendant, as thus explained, and that the injury to the plaintiff complained of proximately resulted therefrom, you will find for the plaintiff, if he at the time was in the exercise of reasonable care." According to this instruction, was the defendant liable to the plaintiff for the damages he suffered on account of the breaking of the link?

The train upon which the plaintiff was injured was made up at Coffeyville, in the state of Kansas. There were twenty cars and a caboose in the train, and all of them, except four, belonged to other companies—were foreign cars. Only four belonged to the defendant. The broken link was not furnished by the defendant, and did not belong to it, but came into the train with one of the foreign cars. All these cars were inspected at Coffeyville before they were made a part of the train. But the pins and links which were used in coupling them were not examined by the inspector. It was not his duty to do so. The switchmen made up the trains, and it was their duty to put only sound links and pins in the train. It was made their duty, because in making up trains they are compelled to handle them in coupling the cars; and they were furnished with pins and links amply sufficient to supply all deficiencies.

The links used by the defendant in the operation of its trains were made by skilled and experienced manufacturers, under a contract which required them to make each link of a minimum tensile strength of 50,000 pounds to the square inch. When they were made, they were inspected and tested by the manufacturers, and then they were shipped to the defendant, and were again inspected by its employees. These links were furnished the trainmen, and they were required to keep them, in adequate numbers, on the train, and to substitute one of

them for any defective or broken link which appeared in the train. This was specially made the duty of the brakemen.

According to the evidence, the defendant was diligent in providing means to guard against accidents caused by defective links. The injury received by plaintiff on the 19th of September, 1895, was caused by a link which was in defendant's service only a few hours, and in that time drew twelve or fourteen cars about seventy-four miles; and yet there was evidence tending to prove that there was a break in it at the time it came into the possession of the defendant, and that it was not discovered until after the accident. The failure to make the discovery in time was no fault of the defendant, unless the negligence of its employees whose duty it was to examine the link before using it can be imputed to the master.

In all actions *ex delicto* for injuries to person or property (to which class this belongs), the right to recover, and the limit of the amount of the judgment, are determined and governed by the laws of the place where the injury was done. *Carter* v. *Goode*, 50 Ark. 155; *Northern Pacific Railroad Company* v. *Babcock*, 154 U. S. 190. The injury in this case was done in the Indian Territory. The common law was in force in that country at that time. Congress, by an act entitled, "An act to provide a temporary government for the Territory of Oklahoma, to enlarge the jurisdiction of the United States court in the Indian Territory, and for other purposes," approved May 2, 1890, provided that chapter 20 of Mansfield's Digest of the Statutes of Arkansas shall be extended over and put in force in the Indian Territory, so far as it is applicable, and not in conflict with any act of Congress. (Public Acts of the First Session of the 51st Congress, p. 94, § 31). The chapter twenty referred to provides that "the common law of England, so far as the same is applicable and of a general nature, and all statutes of the British Parliament in aid of or to supply the defect of the common law, made prior to the fourth year of James the First (that a e applicable to our form of government), of a general nature and not local to that kingdom, and not inconsistent with the constitution and laws of the United States, or the constitution and laws of this state, shall be the rule of

decision in this state, unless altered or repealed by the general assembly of this state." No evidence of the passage of the act of May 2, 1890, was adduced, but it is our duty to take judicial notice of its enactment. *Bayly* v. *Chubb*, 16 Gratt. 284; *Coughran* v. *Gilman*, 81 Iowa, 442; *Mangun* v. *Webster*, 7 Gill, 78; Constitution U. S., art. 6; 1 Greenleaf on Evidence (16 Ed.) § 490.

In the absence of evidence to the contrary, the common law is presumed to be also in force in Kansas, where the train on which the plaintiff was employed at the time he was injured was made up. *Norris* v. *Harris*, 15 Cal. 226; *Thorn* v. *Weatherly*, 50 Ark. 237; *Peel* v. *January*, 35 Ark. 331; *Eureka Springs Ry.* v. *Timmons*, 51 Ark. 459. According to the common law, the master is not liable for an injury to his servant, caused by the negligence of a fellow servant engaged in the same business, provided there was no negligence in the employment of the latter or in his retention. He is not liable, because the servant took into account and assumed all the risks and hazards ordinarily incident to his employment when his wages were fixed. Holding that the exemption of the master from liability was based upon this principle, this court, in *Railway* v. *Triplett*, 54 Ark. 296, said: "Where one servant is shown to have been injured by another, the question is, not whether the two servants were fellow servants in any technical sense of the term, but whether the injury was within the risk ordinarily incident to the service undertaken;" and, if so, held that "there is no common-law liability on the part of the employer; if not, there is such liability; and the injury, except as it bears on the above is not one of grades or departments."

Following this rule in *St. Louis Southwestern Railway Company* v. *Henson*, 61 Ark. 302, this court held that the master was not liable for injuries to a bridge foreman that were caused by the negligence of an engineer, both of whom were in its service, but in different departments. The plaintiff in that case was "foreman of a bridge and building gang," who were employed by the defendant to repair bridges, culverts and trestles. He was furnished with cars, in which he lived and boarded the men working under him. These cars were moved

from time to time to the different places on its road where the work of the plaintiff and his men was needed. At one time when it was moving these cars and plaintiff was on board of them, one of its trains, through the negligence of the engineer operating the same, collided with them and seriously injured the plaintiff. In speaking with reference to these facts, this court, through Justice Wood, said: "The plaintiff and the engineer whose negligence caused the collision were in different departments of the company's service. The former belonged to the bridge and building department, and the latter to the transportation depart‐ ment. Neither was under the control of the other. But the fact that they belonged to separate departments is of no consequence, further than it may tend to show whether or not the injury complained of was within the risks 'ordinarily incident to the service undertaken.' The danger of the collision of trains growing out of the negligence of engineers is open and palpable, and was reasonably to be anticipated by the plaintiff in the busi‐ ness in which he was engaged. It was certainly but a normal and natural risk for a bridge foreman to assume when he en‐ tered upon the service of the company; for these boarding cars in which he lived were constantly on the move, and they were pulled about over the road by the engineers on the various trains. The plaintiff had every opportunity to, and doubtless did, know the manner and method of the movements of these trains. His work necessarily brought him in close contact with these engineers, and he knew that they manipulated the motive power. There was nothing of the master's duty in the work of running the engine. The doctrine announced by this court in *Triplett* v. *Railway Co.*, 54 Ark. 289, applied to the facts of this record, determines the relation of the plaintiff and the defaulting engineer as that of fellow servants."

In *St. Louis, Iron Mountain & Southern Railway Company* v. *Gaines*, 46 Ark. 455, the plaintiff was a brakeman on a train, in the employment of the defendant. The train was composed of cars which were cursorily inspected in transit, at Texarkana, by a person employed by the defendant for that purpose. One of such cars belonged to another company. All the cars were decided by the inspector to be in good and safe condition, and

were allowed to proceed on their way. If any car had not been so decided, it would have been set out on the repair track for repairs. But all passed inspection. After this it was discovered that the spring of the draw-head of the foreign car was broken, and there was evidence to show that the plaintiff was injured by reason of the defect. As to the evidence showing these facts, the court said: "There is no proof that the railroad company, or any of its employees, had any knowledge of any defects in the coupling apparatus of the car or its fastenings prior to the accident. The car did not belong to the defendant, but to a connecting carrier. It was duly inspected on the same day the accident occurred, and pronounced to be road-worthy by being placed in the train. There is no reason to suppose the car inspector was incompetent, or that, on this particular occasion, he performed his duty carelessly. * * * There is not a particle of evidence that the defendant omitted any duty which it owed to the plaintiff.

"Now, notice of the alleged defect, or, what amounts to the same thing, the means of knowledge, which the company failed to use, was a material fact which was necessarily involved in the verdict. Consequently, as no testimony was given from which the jury could infer that the company knew, or might by reasonable diligence have discovered, the defect in time to remedy it and prevent the casualty, the verdict is not supported by sufficient evidence.

"And, even had it been shown that the drawhead was loose or broken before the train was sent out, and that the defect was discoverable upon a proper inspection, yet the plaintiff cannot recover for the negligence of his fellow servant. Here, again, the court committed an error to the prejudice of the defendant; for it refused to tell the jury that the car inspector and the brakeman were fellow servants. They are not only employed and paid by the same corporation, but their separate services have an immediate object—the moving of the trains. Neither works under the· orders or control of the other, and each takes the risk of the other's negligence in the performance of his service."

The doctrine of the last mentioned case was reaffirmed in

*St. Louis, Iron Mountain & Southern Railway Co.* v. *Rice,* 51 Ark. 467.

We are aware that some courts have held that an inspector of cars and other employees of a railroad company are not fellow servants. (*Little Rock & Memphis Railroad Company* v. *Moseley,* 56 Fed. Rep. 1009; and notes to *Cincinnati, Hamilton & Dayton Railroad Company* v. *McMullen,* 38 Am. & Eng. R. Cases, 172–174.) The ground upon which this doctrine is based is that it is the duty of a railroad company to provide safe and suitable instrumentalities for its employees to work with, and to keep the same in repair. But the company is not the insurer of the safety of the servant, nor does it guaranty to him that the tools, machinery, and other instrumentalities which it furnishes will not prove defective. It guaranties only that due care shall be used in supplying such appliances and in keeping the same in repair. "Whenever an employee seeks to recover damages for injuries resulting from insufficiency of any of the machinery or instrumentalities furnished by the railroad company, it will not only devolve upon such employee to prove such insufficiency, but it will also devolve upon him to show, either that the railroad company had notice of the defects, imperfections or insufficiencies complained of, or that by the exercise of reasonable and ordinary care and diligence it might have obtained such notice; and proof of a single defective or imperfect operation of any of such machinery or instrumentalities, resulting in injury, will not, of itself, be sufficient evidence, nor any evidence, that the company had previous knowledge or notice of any supposed or alleged defect, imperfection or insufficiency in such machinery or instrumentalities." *St. Louis, I. M. & So. Ry. Co.* v. *Gaines,* 46 Ark. 570.

The inspection of cars on the way to their destination is cursory, and made for the purpose of ascertaining whether they be roadworthy, and can be hauled without unnecessarily imperiling the safety of the trainmen. It is temporary, and is for the purpose of ascertaining whether the cars can be hauled to their destination, and is a part of the "executive details" of the operation of the train; and, like other acts necessary to be performed by the trainmen to haul the train, there is no liability

of the railroad company to its employees for its negligent performance. If care and diligence has been exercised in the selection of competent persons for that duty, a negligence by them in the performance of it is a risk of the employment that the co-employee takes when he enters the service. *Slater* v. *Jewett*, 5 Am. & Eng. R. Cases, 515, S. C. 84 N. Y. 61; *Holden* v. *Fitchburg R. Co.*, 129 Mass. 268. But there is a time when it is the duty of a railroad company to its employees to inspect its machinery and other appliances for the purpose of discharging its obligation to use due care in keeping the same in good repair. It is bound to take notice of the liability of its tools and machinery to decay from age and to wear out by use, and to protect its servants against such contingencies by inspection at reasonable intervals for the purpose of ascertaining what repairs are needed, and for a failure to discharge this duty is liable to the servants for damages. *Holden* v. *Fitchburg R. Co.*, 129 Mass. 268; 3 Elliott, Railroads, § 1278.

The distinction as to the liability of a railroad company for the two inspections, according to the previous rulings of this court as to the common law, which we have attempted to show, were pointed out and recognized in *St. Louis, Iron Mountain & Southern Railway Company* v. *Rice*, 51 Ark. 467. In that case the court said: "The railway company must have its repair shops to maintain its tools, rolling stock, etc., in good repair, and it must have its inspectors, not only at its *termini*, where a general overhauling is had, but at convenient stations along the line to detect such injuries as may have been received *en route*; and, should such company knowingly employ and retain persons incompetent for the performance of this high service, it would be liable to the person injured, though such persons were fellow servants of the inspector. *   *   *

*   * While we recognize the liability of the railway company for the willful or negligent default of its chief inspectors, and those deputed to supervise the condemnation of unsuitable tools, rolling stock, etc., we cannot assent to the proposition that every yard inspector on the line of a railroad is a vice-principal. Upon what we conceive to be the soundest principles, and the weight of authority, we hold that the appellee

and the yard inspector were fellow servants, and hence that the appellee had no cause of action against the appellant."

We have not overlooked the fact that the car which was the cause of the injury in this case was a foreign car in transit over the defendant's road. But that does not affect the defendant's liability; for the duty of inspection of cars in transit is the same, whether the car is a foreign one or a domestic one. *St. Louis, I. M. & S. Ry. Co.* v *Gaines,* 46 Ark. 555; *Ballou* v. *Chicago & N. W. R. Co.* (Wis.), 5 Am. & Eng. R. Cases, 480; *Gutridge* v. *Mo. Pac. Ry. Co.,* 94 Mo. 468; *Goodrich* v. *N. Y. Cent. & Hudson River R. Co.,* 116 N. Y. 398; *Sack* v. *Dolese,* 137 Ill. 129; *Baltimore & Potomac R. Co.* v. *Mackey,* 157 U. S. 72.

The switchmen whose duty it was to make up the trains at Coffeyville, and the firemen on the train so made up, were engaged in the service of the defendant, and their labors contributed to accomplish the same result—the moving of the trains. The consequences incident to the use of defective links in the making up trains by switchmen were apparent. The separation of trains by the breaking of such links is of frequent occurrence. The risk of injuries resulting therefrom was ordinarily incident to the employment of the fireman, and was assumed by him. In examining and rejecting defective links in making up trains, the switchmen performed no part of the duty of the master to the fireman, although it was necessary for them to inspect the links already in use, in order to discharge the duties imposed upon them. They (the fireman and switchmen) were therefore, according to the decisions of this court, fellow servants at common law.

But the plaintiff says that the defendant admitted in the trial of this action that, according to the law in force in the Indian Territory, "a car inspector was not a fellow servant with the fireman," and that it is now estopped from showing that this was not the law. It is true that this admission was made, and that this court said in *Kansas & Arkansas Valley Railroad Company* v. *Fitzhugh,* 61 Ark. 341, of a like admission, that the defendant, having made it, could not dispute it in this court, nor assume a position inconsistent with it. But·

the admission in this case is not disputed, and there is no reason for doing so, as it is confined to firemen and car inspectors. It was proved, and was not disputed, that it was not the duty of the car inspector to inspect the pins and links used in coupling the cars of a train, and that the switch crew, who make up trains, are required to put only sound links and pins in the train. The railroad company evidently thought that the duty imposed upon the switchmen made it unnecessary for the car inspector to examine the links and pins, and there is no reason why it should not. The switchmen are compelled to handle the pins and links in making up the train, and, to make the examination required, no special mechanical skill was necessary.

There was no evidence that the defendant was guilty of negligence in the employment of switchmen, or in the performance of any other duty to the plaintiff, and consequently there was no evidence to sustain the verdict of the jury.

Reversed and remanded for a new trial.