### St. Louis & San Francisco Railroad Company v. Arnett.

#### Decided December 24, 1904.

**Fellow Servants—Rule in Indian Territory—Common Law.**

Plaintiff was an assistant hostler, engaged at work at a point in the Indian Territory in cleaning out engines placed on a switch track for that purpose, and was injured through the negligence of R., his foreman, who was at the time of such injury acting as engineer in moving the engine on the switch track for the purpose of being cleaned. By act of congress (Acts 1st. Sess. 51st. Cong., p. 94, sec. 31), certain chapters of Mansfield's Digest of the Statutes of Arkansas, adopting the common law in that State, were put in force in the Indian Territory, and under the decisions of the Supreme Court of Arkansas construing the common law, the question of fellow servants is determined exclusively by the character of the act entrusted to the person, rather than the rank of the employe. Held, that such adoption of the common law for the Indian Territory carried with it the construction so given thereto by the Arkansas courts, and plaintiff was not entitled to recover, as his injury resulted from the act of a fellow servant.

Appeal from the District Court of Grayson. Tried below before Hon. J. M. Pearson.

*L. F. Parker* and *Head & Dillard,* for appellant.

*J. T. Suggs* and *Randell & Wood,* for appellee.—Our state courts hold that where the injury occurred outside of the State of Texas, the law of the State where it occurred would be pleaded and proven in so far as it governs the rights of the parties, but that said laws must be construed as interpreted by the highest courts of our own State. The common law having been shown to obtain in the Indian Territory as to the doctrine of fellow-servants, it devolved on our own courts to apply that law to the facts in accordance with the interpretation given by the Texas courts. Railway v. Thompson, 33 S. W. Rep., 723; Railway v. Cox., 145 U. S., 593; Evey v. Railway, 38 L. R. A., 393.

BOOKHOUT, Associate Justice.—On the 10th day of June, 1903, this suit was instituted by appellee, as plaintiff, to recover of appellant, as defendant, $50,000 damages for personal injuries sustained by him while in appellant's employ. A trial before a jury on October 20, 1903, resulted in a verdict and judgment in favor of appellee for $21,500, to reverse which this appeal is prosecuted.

*Conclusions of Fact.*—Appellee, J. L. Arnett, on December 30, 1902, was in the employ of the St. Louis & San Francisco Railroad Company at Sapulpa, Indian Territory, in the capacity of hostler's helper. His duties were to assist the hostlers to put the engines in the roundhouse, take them out and get them ready to go out on the road, put coal and water in them and clean out the ash pan. The company had provided a pit over which to clean the ash pans of engines, and at which pit two engines could be cleaned at a time, but the number of engines coming in and going out of Sapulpa was so great that there was not sufficient room over the pit to clean the engines, and as a re-

sult it was the custom to clean them on the track upon which appellee was injured, which track was not provided with a pit. Upon this track as many as ten or twelve engines were cleaned each day; and as many as twenty engines were cleaned each day at Sapulpa.

On December 30, 1902, the appellee and E. E. Conway, hostler, were instructed by appellee's master mechanic, T. S. Reilly, to prepare engine No. 809 to go out. They put water and coal in the engine and ran it upon the north coal chutes track, which is the first track north of the coal chutes and leads to the roundhouse. The engine was brought to a stop and, as was customary, the wheels were blocked. On this track appellee cleaned the ash pans of five or six engines each day. Just north of the north coal chutes track was the storage track, which was occupied by engines 821, 811 and 337, in the order named. These tracks ran east and west, and all the engines named were headed east. Appellee got down under the engine to rake the ashes out of the ash pan. It usually took fifteen or twenty minutes to clean out the ashes. While he was so at work T. S. Reilly got upon engine 811 and ran it up east against 337 and pushed 337 out upon the main line so that it could be put in on the south coal chute track. The storage track and north coal chute track are connected with the main track switch. When Reilly started east the switch was set for the north coal chutes track, and he told T. C. Ford, a laborer in appellant's employ, to set the switch for the storage track so Reilly could get out.

After Reilly passed out Ford reset the switch for the north coal chutes track. It should have been set for the storage track. Then engine 811 came back against 809, under which appellee was at work, striking it and moving it backward about 8 feet and seriously and permanently injuring appellee. Appellee was not informed that his engine was about to be struck in time to get out from under it. Reilly knew that appellee was under engine 809 and testified that after he ascertained his engine 811 was going upon the coal chutes track he reversed his engine and gave it steam and made all possible efforts to stop it. It was running about 4 miles per hour when it struck 809. The appellant had no rule in reference to placing signals on, or with reference to engines situated as was the one under which appellee was working. It was a disputed issue as to whether the company had adopted rules that before an engine hostler or his helper should go under an engine to clean the ash pan, or for any other purpose, they should see that the engine throttle was securely closed, cylinder cocks open, and that the wheels were blocked and that one of their number should keep a constant lookout in order to signal any train or engine approaching, to warn them in time to permit the person to get from under the engine. T. S. Reilly was appellants master mechanic at the time, with power to employ and discharge its employes, including appellee, and exercised general control over the men, engines and premises of defendant company at Sapulpa, Indian Territory.

As a result of his injuries, appellee sustained damage in the amount of the verdict, and if the appellant is liable under the facts the verdict is not excessive. The common law is in force in the Indian Territory. Under the common law as existing in the Indian Territory, the ques-

tion of fellow servant is determined exclusively by the character of act entrusted to the person, rather than the rank of the employe. Under the common law as construed in the Indian Territory, the act of T. S. Reilly in running engine 811 against the one under which appellee was at work was the act of a fellow servant.

Appellee had only been engaged in this character of work seventeen days and was inexperienced.

*Conclusions of Law.*—Under our view of the case it becomes unnecessary to discuss in detail the many assignments of error presented in appellant's brief. We are of the opinion the facts show the injury was the proximate result of the negligence of T. C. Ford in setting the switch for the north coal chute track after Reilly had passed over it, and of Reilly in running engine 811 against the one under which appellee was at work. It is conceded that Ford was at the time a fellow servant of appellee. It is insisted, however, that Reilly was a vice-principal of appellant, although at the time he was performing the duties of a subordinate in operating the engine that caused appellee's injuries. The ruling of our courts, prior to the adoption of the fellow servant statute, in construing the common law, was that an employe who has charge of a special department of a company's business, is a vice principal of the company, and not the fellow servant of those under his control. Sweeney v. Railway Co., 84 Texas, 436; Missouri P. Ry. Co. v. Williams, 75 Texas, 7; Texas & P. Ry. Co. v. Reed, 32 S. W. Rep., 118; see also Railway v. Ross, 112 U. S., 377; Railway v. Baugh, 149 U. S., 368; Railway v. Camp, 65 Fed. Rep., 959.

Such, however, is not the construction placed on the common law by the Supreme Court of the State of Arkansas. The uncontradicted evidence shows that in that State, prior to May 20, 1890, the question of fellow servant is determined exclusively by the character of the act entrusted to the person, rather than the rank of the employe. Reilly, in operating the engine that caused appellee's injuries, was performing the duty of a subordinate, and under the decisions of Arkansas prior to the adoption of its fellow servant statute, was a fellow servant of the appellee. Railway v. Torrey, copied in record; Railway v. Brown, 54 S. W. Rep., 865; Railway v. Johnson, 54 Fed. Rep., 476. By an Act of Congress of May 2, 1890, certain chapters of Mansfield's Digest of the Statutes of Arkansas, adopting the common law in that State, were put in force in the Indian Territory. Acts, 1st sess. 51st Cong., p. 94, sec. 31; Overton v. McCabe & Steen, 3 Texas Law Jour., 689, 79 S. W. Rep., 862; Belt v. Railway, 4 Texas Civ. App., 231. Such putting in force in the Indian Territory of the common law as then existing in Arkansas, carried with it the construction theretofore placed thereon by the courts of that State. Railway v. Johnson, supra; Railway v. Brown, supra; Endlich on Int. Stat., sec. 371.

It follows that Reilly, in operating engine 811 and in running the same against 809 under which appellee was at work, was under the laws in force in the Indian Territory, a fellow servant of appellee. The injuries to appellee having been proximately caused by the negligence of his fellow servants, we conclude that the court should have given the

special charge requested by appellant, instructing a verdict for defendant. The refusal of this charge is made the ground of the fourteenth assignment of error, which assignment is sustained.

The cause seems to have been fully developed, and under this holding it is unnecessary to remand the case. We conclude the judgment should be reversed and here rendered for appellant.

*Reversed and rendered.*

OPINIONS ON MOTIONS FOR REHEARING AND TO CORRECT CONCLUSIONS
OF FACT.

1. Complaint is made of our finding that "after Reilly passed out (of the switch) Ford reset the switch for the coal chutes track. It should have been set for the storage track." The particular finding complained of is that, "it should have been set for the storage track." There is no direct evidence to support this finding, but we are of the opinion that it is a proper deduction to be drawn from the testimony of Reilly, that, "when I started out of the storage track on engine 811, the switch was set for the coal chute track, and I asked Ford to set it for the storage track, so that I could get out, and an investigation after the accident disclosed that after I passed over the switch he reset it for the coal chute track. Ford threw the switch, and he is and was an employe of the company. I had just passed out of the switch; left a man there, and did not suspect that he would change the switch, as he could see what I had brought the engine up there for."

But should we be mistaken in our conclusion that Ford should have set the switch for the storage track, instead of the coal chutes track, and if Ford was free from negligence proximately causing appellee's injuries, the result must be the same.

Having held that Reilly, under the facts, was a fellow servant of appellee and that his negligence proximately caused appellee's injuries, appellee was not entitled to recover.

2. The appellee also complains of the finding that, "Reilly knew that appellee was under engine 809." Reilly had ordered the appellee and the hostler to prepare engine 809 to go out on its run. In testifying as to the position of engine 809 at the time he got on engine 811 to push engine 337 out on the main line he said, "engine 809 was standing on the coal chutes track being made ready by the engine hostlers to go out on its run." · He knew that in preparing the engine to go out it was necessary for one man to get under the engine and hoe the ash pan. If he did not know that appellee was under the engine he did know that appellee and the hostler were preparing engine 809 to go out on its run, and were likely to be in a place of danger, which made it necessary for him to avoid striking it with engine 811.

The appellee's motion for rehearing is overruled. The motion to correct conclusions of fact, except wherein the conclusions are modified by the above findings, is overruled.

Delivered January 21, 1905.

Writ of error refused.