MISSOURI PACIFIC RAILROAD COMPANY *v.* WELLBORN
& WALLS.

Opinion delivered February 15, 1926.

1. CARRIERS—INTERSTATE SHIPMENT—PUBLISHED TARIFF.—The rights of a shipper as against an interstate carrier are measured by the published tariff filed with the Interstate Commerce Commission, and the rights as defined by the tariff cannot be varied or enlarged by either the contract or tort of the carrier.

2. CARRIERS—INTERSTATE SHIPMENT—LIABILITY OF INITIAL CARRIER.—The initial carrier in interstate shipments is liable for the negligence of any connecting carrier, including the terminal carrier.

3. CARRIERS—PRESUMPTION OF NEGLIGENCE.—Proof of damage to a shipment raises a presumption of negligence, and the burden rests on the carrier to overcome that presumption.

4. CARRIERS—NEGLIGENCE OF TERMINAL CARRIER—JURY QUESTION.—Where the undisputed evidence showed that a shipment of lumber arrived at its destination in good condition, but it was rendered valueless by being unloaded at the place and in the manner shown in the record, and the railroad company made no effort to show that there was no negligence in unloading the lumber, there was no question of fact to be submitted to the jury, and the court properly directed a verdict for the shippers.

Appeal from Clark Circuit Court; *J. H. McCollum,* Judge; affirmed.

STATEMENT BY THE COURT.

H. K. Wellborn and H. A. Walls, doing business under the firm name of Wellborn & Walls, sued the Missouri Pacific Railroad Company to recover damages for the breach of a special contract for the shipment of a carload of lumber specially prepared for making toys, from Arkadelphia, Ark., to 137th St. and Southern Blvd., New York City.

According to the evidence for the plaintiffs, they were engaged in the lumber business in Arkadelphia, Ark., during the year 1923, and on the 28th day of November of that year they sold a carload of lumber, specially prepared, to the Side Car Vehicle Mfg. Corporation, New York City. The lumber was about two feet long,

and was specially prepared to be used in making toys. It was prepared according to specifications received from the buyer. The boards were planed and dressed, and then the corners of each board were rounded with a band-saw. They then cut around the edges with a band-saw and sandpapered them. The material was the kind that toy manufacturers generally used in making certain toys.

The plaintiffs were not sure whether the lumber in question could be shipped as lumber on the lumber rate, and asked the agent of the railway company at Arkadelphia about it. They were told that it could be shipped as lumber. The plaintiffs then placed the lumber in the car very carefully, in piles of even numbers. It was flat lumber, so that it could be easily stacked, one piece on another. There was not a full car of it, but it was billed at the minimum weight so that it could be delivered without being disturbed on the way. The lumber was stacked in each end of the car and then walled up so that it could not shake around or be displaced in shipment. The bill of lading showed that the car of lumber was to be delivered to the Side Car Vehicle Mfg. Corp., New York City, at 137th Street and Southern Boulevard, by way of 125th Street Terminal. The lumber was of such size and dimensions that it could have been put in boxes and crates if the railroad agent had required that to be done. The invoice price of the lumber was $1,548, and it was of that value. The freight amounted to $147. The agent of the plaintiffs called upon the Pennsylvania Railroad Company, which was the terminal company, to get the car delivered to the consignee. He was told that the car of lumber could not be delivered at point of delivery because of the rulings of the Interstate Commerce Commission. The agent of the plaintiffs inspected the car of lumber at Jersey City, and it was in good condition at that time. The Pennsylvania Railroad Company unloaded the car of lumber on Pier K, Manhattan Piers, Jersey City, N. J.

This was done because, under the tariff filed by the Pennsylvania Railroad Company with the Interstate Commerce Commission, it could not have delivered the lumber at the manufacturing establishment of the consignee according to the terms of the bill of lading, unless the lumber had been packed in boxes and crates and shipped that way. At the time of the shipment, neither the plaintiff nor the defendant's agent at Arkadelphia knew of the existence of this rule of the Pennsylvania Railroad Company in the schedule or tariff of rates filed by it with the Interstate Commerce Commission. The lumber was inspected after its arrival and found to be worth its original or invoice value. It had no commercial value, and could not be used after it was unloaded.

The circuit court instructed the jury to find a verdict for the plaintiffs for the sum of $1,437, which was the value of the lumber less the freight.

From the judgment against it in favor of the plaintiffs, the defendant has duly prosecuted an appeal to this court.

*E. B. Kinsworthy* and *Samp Jennings,* for appellant.

*R. W. Huie, Jr.,* for appellee.

HART, J., (after stating the facts). Counsel for the defendant contend for a reversal of the judgment on the ground that, under the Interstate Commerce Act, it could not contract for a service not provided for in the tariff schedule filed by it or its connecting carriers with the Interstate Commerce Commission, and that such a contract, if made by it with the shipper, is unenforceable. They point to the fact that the Supreme Court of the United States has decided that the legal rights of the shipper as against the carrier are measured by the published tariff filed with the Interstate Commerce Commission, and that the rights as defined by the tariff can not be varied or enlarged by either the contract or tort of the carrier. *Keogh* v. *Chicago & N. W. Ry. Co.,* 260 U. S. 156, and cases cited; *N. Y., N. H. & Hartford Rd. Co.* v. *Interstate Commerce Commission,* 200 U. S. 361; and

*Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co.,* 204 U. S. 426.

Therefore, they contend that because, under the published tariff of the Pennsylvania Railroad Company, which was the terminal carrier, the lumber could not be delivered to the consignee at the point designated in the bill of lading, the Pennsylvania Railroad Company had the right to unload the lumber at the point where it did unload it, upon the refusal of the consignee to receive it at the station on the railroad nearest to its place of business, which was named as the place of delivery in the bill of lading.

Counsel might be right, if this was all there was in the case; but counsel have not taken into consideration the peculiar facts of this case, which we regard as controlling. Under the decisions of the Supreme Court of the United States above cited and under our own decisions, the initial carrier in interstate shipments is liable for the negligence of any connecting carrier, including the terminal carrier. *C. R. I. & P. Ry. Co. v. Dawson,* 157 Ark. 460, and *Mo. Pac. Rd. Co. v. American Fruit Growers, Inc.,* 163 Ark. 318.

This court has also held that proof of damage to the shipper raises the presumption of negligence, and the burden rests on the carrier to overcome that presumption. *St. L. I. M. & S. Ry. Co. v. Cunningham Commission Co.,* 125 Ark. 577; and *C. R. I. & P. Ry. Co. v. Walker,* 147 Ark. 109.

The undisputed evidence shows that the lumber in question was about two feet long, and was specially prepared to be used for a particular purpose by the consignee. The agent of the railroad company was notified of that fact before the lumber was loaded in the car. It could have been packed in boxes and crates and shipped in that way if the railroad had so directed. It was carefully packed in each end of a car, and was billed as a car of lumber in order to prevent other freight from being placed in the car. The lumber was walled up in each end

of the car, so that it would not become displaced in shipment. It arrived at its destination in good condition. It appears from the record that it was unloaded on the pier in such a way that it became valueless. Under the circumstances just detailed, this constituted negligence on the part of the terminal carrier for which the initial carrier was responsible. The evidence for the plaintiffs is uncontradicted, and shows that the lumber had become valueless after it was unloaded on the pier by the Pennsylvania Railroad Company. It was in good condition before it was unloaded, and the railroad company made no effort to show that there was no negligence in unloading the lumber. Then, assuming that it had a right to deliver the lumber at the pier where it was unloaded, still it had no right to do so in a negligent manner. The undisputed evidence shows that it was worthless after being unloaded, and the circumstances detailing the care with which it was packed, considered in connection with the special use for which it was designed, show negligence on the part of the railroad company in unloading it so that it became valueless. It is a case where there was no effort on the part of the shipper to secure a preferential rate or advantage which was not given to all other shippers. For some reason, as shown by the undisputed evidence, the lumber was rendered valueless by being unloaded at the place and in the manner shown in the record.

Hence there was no question of fact to be submitted to the jury, and the court did not err in instructing a verdict for the plaintiffs.

It follows that the judgment must be affirmed.