American Railway Express Company *v.* H. Rouw Company.

Opinion delivered April 25, 1927.

1. Constitutional law—jurisdiction in transitory action.— Crawford & Moses' Dig., §§ 1147, 1151, 1826, 1829, providing for service of process on agents of foreign corporations, *held* to permit an action to be brought against foreign corporations engaged in interstate commerce for damages for breach of a contract without violating the commerce clause or the due process and equal protection clauses of the Federal Constitution, where plaintiff is a resident and the foreign corporation was doing business in the State, though the controversy arose from a contract of carriage in which the points of origin and destination and all intervening points were outside the State.

2. Courts—transitory action.—An action against an express company for damages for failure to deliver strawberries in as good condition as that in which they were received, *held* a transitory action, not required to be brought in the State where the contract was entered into or performed.

3. Corporations—transitory actions.—A foreign corporation, doing business in the State and having a designated agent on

whom process may be served, may be sued in any county in this State by serving summons on the agent outside the county in which the suit is brought.

4. CARRIERS—NECESSITY OF NOTICE OF DAMAGES.—A carrier, sued for damages to strawberries in transit, could not avail itself of the defense that a written notice of the claim had not been given as required by the contract of shipment, where the jury found that the damage was due to the carrier's negligence, since negligence was excepted by the terms of the contract.

5. CARRIERS—DAMAGE TO SHIPMENT—BURDEN OF PROOF. — In an action against a carrier for damages to a shipment in transit, the burden is on the plaintiff to prove that the goods were in good condition when delivered to the carrier, and that damage resulted while they remained in defendant's possession as a common carrier.

6. CARRIERS—DAMAGE TO SHIPMENT—INSTRUCTIONS.—In an action against a carrier for damage to goods in transit, an instruction that the burden was on the shipper to show that the shipment was delivered to the carrier in good condition, and that damage resulted while in the carrier's hands, was not in conflict with another instruction that the proof of delivery to the carrier in good condition and of delivery by the carrier in bad condition established a *prima facie* case of negligence.

Appeal from Crawford Circuit Court; *James Cochran*, Judge; affirmed.

*Warner, Hardin & Warner*, for appellant.

*C. M. Wofford*, for appellee.

WOOD, J.   This is an action by the plaintiff, H. Rouw Company, against the defendant, the American Railway Express Company, in the circuit court of Crawford County, begun June 11, 1925, to recover damages in the sum of $489.50.

The plaintiff alleged, in substance, that, on June 17, 1924, it purchased a car of strawberries at Sarcoxie, Missouri, consisting of 480 crates of berries, which was delivered to the defendant, consigned to W. W. Stevens at Kansas City, Missouri; that plaintiff diverted the car to the Becker-Wiel Company at Detroit, Michigan; that the berries were in good condition when delivered to the defendant, but, through the negligence of its agents, servants and employees in failing to re-ice the car, the

berries were in a decayed condition when they reached their destination, to the damage of the plaintiff in the sum above named, for which it prayed judgment.

Summons was issued for the defendant, directed to the sheriff of Pulaski County, and was served by delivering a copy to defendant's agent designated for service in that county. The defendant moved to quash the service, setting up, in substance, that it was a corporation organized under the laws of the State of Delaware and operating as a common carrier, with a part of its line running through the States of Louisiana and Arkansas; that the shipment mentioned in the complaint was not transported by the defendant through any part of the State of Arkansas; that the contract of shipment was not made in the State of Arkansas and was not to be performed in the State of Arkansas; that the witnesses which the defendant must call and whose personal attendance at the trial defendant must have to properly defend the action, are residents of the States of Missouri and Michigan, and cannot be subpoenaed to appear in the courts of Arkansas; that the defendant cannot adequately develop the facts in evidence by taking the depositions of these witnesses; that, to take the depositions of the witnesses necessary to develop the defense, would interfere with the defendant's operations and business as an interstate carrier and would impose a heavy burden on interstate commerce; that the statutes of Arkansas, if construed to allow service of summons upon a foreign corporation engaged in interstate commerce under these circumstances, would be unconstitutional and void, being in contravention of the commerce and due process clauses of the Constitution of the United States.

The defendant alleged that the statute allowing service on foreign corporations was not intended to permit service upon them in causes arising from transactions foreign to the State of Arkansas, such as is involved herein.

At the hearing of the motion the undisputed testimony by the defendant was to the effect that the ship-

ment was as alleged in the complaint and the motion to quash the service, and that the defendant was a foreign corporation doing business in Arkansas, as therein alleged. The superintendent of the defendant, residing at Little Rock, testified that the defendant maintained an office and agent in the city of Van Buren, Arkansas, and his testimony tended to fully sustain the allegations of the motion to quash as to the inconvenience of procuring the personal attendance of the witnesses for the defendant at the trial if had at Van Buren, Arkansas; that the personal presence of such witnesses at the trial was essential to the defense, and, if such be required, "it will have quite an effect on defendant's interstate business." The witnesses for the defendant, when the shipment was made, were residents of the States from and through which the shipment moved. Some of these witnesses have left defendant's services.

On cross-examination the witness stated that the defendant had attorneys in the various States where the witnesses lived, who could look after the taking of depositions. Witness assumed that it would require as long a time to try the case in the other States as it would in Arkansas.

The court overruled the motion, and, in doing so, found that "the cause was a transitory action involving the alleged loss and damage to a carload shipment of strawberries from Sarcoxie, Missouri, to Detroit, Michigan, moving in interstate commerce; that the service had in said cause upon said designated agent is valid, legal and binding upon the defendant." The appellant duly excepted to the ruling of the court. The defendant answered, denying the material allegations of the complaint, and alleged that, if the berries were damaged as alleged, such damage resulted from inherent defects therein; that the same were heated, wet, rotten, and unfit for shipment; that the berries were negligently loaded by the shipper and negligently handled by the consignee at the place of destination.

The testimony adduced by the plaintiff tended to prove that it .delivered a carload of strawberries at Sarcoxie, Missouri, for shipment to the Becker-Weil Company at Detroit, Michigan; that the berries were in good condition, and properly loaded for shipment; that they should have carried to Detroit in good condition; that, when they reached Detroit, they were in a decayed condition, resulting from lack of proper refrigeration.

The testimony on behalf of the defendant tended to prove that there were no defects in the car in which the berries were shipped; that it met all the tests required for properly carrying perishable goods, and that the car was properly iced at the point of origin and at the point of destination and at all intervening points necessary for the proper icing of the car. In other words, the testimony for the defendant tended to prove that the shipment was handled from the point of origin to the point of destination without negligence on the part of the carrier. The testimony, both on behalf of the plaintiff and the defendant, tending to prove their respective contentions as to negligence, is voluminous, and we deem it unnecessary to set it forth in detail.

At the conclusion of the testimony, over the objection of the defendant, the court granted prayers for instruction by the plaintiff to the effect that, if the jury found that the berries were delivered in a good condition to the defendant for shipment, and the same were in a damaged condition when they reached Detroit, the plaintiff had established a *prima facie* case of liability against the defendant, and the burden was upon the defendant to show that the damaged condition of the berries was due to no negligence on its part. The court also, over the objection of the defendant, gave other prayers of the plaintiff for instructions, which, in effect, told the jury that the defendant, in the absence of express stipulation to the contrary, was liable as the insurer against loss or damage, except such as was caused by inherent defects or weakness in the commodity shipped, and that it was the duty of the defendant to exercise ordinary care to

furnish means of transportation suitable for the shipment of perishable goods, and to exercise ordinary care to keep same properly iced to preserve such goods until the same were delivered at their destination.   The court told the jury that ordinary care was such care as an ordinarily prudent person would use under like or similar circumstances, considering the fact that the shipment was of a perishable nature.

The court refused defendant's prayer for instruction No. 7, which, in effect, told the jury that, before the plaintiff could recover, it must show by a preponderance of the testimony that the berries were in a good condition for shipment at the time they were delivered to the defendant, and that the defendant failed to exercise ordinary care to ice the same in transit, and negligently failed to furnish proper transportation and to transport the same within a reasonable time, and that such alleged negligent acts were the proximate cause of damage to the plaintiff.

Defendant's prayer for instruction No. 11 would have told the jury that, if the defendant iced the car before the berries were loaded at Sarcoxie, Missouri, and that the car was again iced after the berries were loaded and during transit, then the plaintiff could not recover.

The court granted other prayers of the defendant for instructions which, in effect, told the jury that the burden was upon the plaintiff to prove that the berries were in good condition when they were delivered to the defendant at Sarcoxie, Missouri, and that the damage to such berries, if any, resulted while the same were in defendant's possession as a common carrier.

The court refused several prayers of the defendant for instructions directing the jury to return a verdict in favor of the defendant generally, as well as on the issue as to whether the car was properly iced, and as to whether or not the defendant was negligent in delaying transportation.   The defendant duly excepted to the ruling of the court in granting and refusing prayers for instructions.

The jury returned a verdict in favor of the plaintiff

in the sum of $200.    Judgment was rendered in plaintiff's favor for that sum, from which is this appeal.

1.    The court did not err in overruling appellant's motion to quash the service of summons and in assuming and retaining jurisdiction of the cause of action.    Section 1147, C. & M. Digest, provides, in part, that service of process may be had by service of summons upon the agent or agents of such corporations in the same manner that process may be served on railroad corporations existing under the laws of this State.

Section 1151 provides:  "Where the defendant is a foreign corporation having an agent in this State, the service may be upon such agent."

Section 1826 provides, in part, that foreign railroad corporations shall file in the office of the Secretary of State a copy of its charter or articles of incorporation or association, and shall name an agent upon whom process may be served.

Section 1829 reads as follows:  "Service of summons and other process upon the agent designated under the provisions of § 1826 at any place in this State shall be sufficient service to give jurisdiction over such corporation to any of the courts of this State, whether the service was had upon said agent within the county where the suit is brought or is pending or not."

The appellee is a domestic corporation, having its domicile and principal place of business at Van Buren, in Crawford County, Arkansas.    The appellant is a Delaware corporation, doing a general express business throughout the United States.    It operates, as a common carrier, a line of cars through the States of Missouri and Arkansas and through the city of Van Buren, Crawford County, in the latter State.    The appellant has complied with our statutes, *supra,* in designating an agent in our State upon whom process may be served, and appellant transacts business in our State, but the shipment involved in this action began at Sarcoxie, Missouri, and ended at Detroit, Michigan, and did not pass through the State of Arkansas.    Appellee instituted this action

against the appellant in the circuit court of Crawford County, Arkansas, sitting at Van Buren, where appellee had its domicile. It is conceded by the appellant that summons was served upon the agent of appellant duly designated under our statutes for receiving service of process in this State.

· Learned counsel for the appellant contend that it would violate both the commerce and due process and equal protection clauses of the Constitution of the United States to construe our service statute above so as to enable appellee to maintain this action. To sustain their contention counsel rely upon the cases of *Davis* v. *Farmers' Cooperative Company*, 262 U. S. 312, 43 S. Ct. 556; *Atchison, Topeka & Santa Fe R. R. Co.* v. *Wells*, 265 U. S. 101, 44 S. Ct. 469; and *State of Missouri ex rel. St. Louis, B. & M. Ry. Co.* v. *Taylor*, 266 U. S. 200, 45 S. Ct. 47.

In the first case mentioned the facts, briefly stated, are substantially as follows: Minnesota has a statute allowing foreign corporations having an agent in the State to solicit freight and passenger traffic, or either, over its lines outside of the State, to be served with summons by delivering a copy thereof to such agent. The Atchison, Topeka & Santa Fe Railroad Company, a Kansas corporation engaged in interstate transportation, did not own or operate any railroad in Minnesota, but maintained an agent there for the solicitation of traffic. In April, 1920, suit was brought by another Kansas corporation in a court of Minnesota against the Director General of Railroads, as agent, on a cause of action arising under Federal control. Service was made pursuant to the Minnesota statute; the recovery sought was for loss of grain shipped under a bill of lading issued by the carrier in Kansas for transportation over its line from one point in that State to another. So far as it appeared, the transaction was in no way connected with the State of Minnesota or with the soliciting agency located there. The carrier's line of railroad did not touch Minnesota, and the plaintiff was not, and never had been, a resident of the

State of Minnesota.    In the opinion the Supreme Court
of the United States, among other things, said: "But
orderly, effective administration of justice clearly does
not require that a foreign carrier shall submit to a suit
in a State in which the cause of action did not arise, in
which the transaction giving rise to it was not entered
upon, in which the carrier *neither owns nor operates a
railroad, and in which the plaintiff does not reside.*" The
facts of that case therefore differentiate it from the case
at bar and we find nothing in the decision to support the
appellant's contention.

In the second mentioned case above it was held, quot-
ing syllabus No. 2: "A State statute permitting a citizen
and resident of another State to prosecute a cause of
action which arose elsewhere, against a railroad corpora-
tion of another State, which is engaged in interstate
commerce *and neither owns nor operates a railroad, nor
has consented to be sued,* in the State where the action
is brought, is so far invalid." The facts in that case
likewise were wholly unlike those of the case in hand.

In the third case mentioned, the facts are stated in
the second syllabus as follows: "A Delaware corpora-
tion, having a usual place of business in Missouri,
brought an action in a Missouri court against a Texas
corporation which operated a railroad *in Texas only and
had no place of business, nor had consented to be sued,
in Missouri,* the cause of action being damage, done
possibly in Missouri, to freight shipped to that State
from Texas, over defendant's line, on a through bill of
lading, and the basis of jurisdiction in Missouri being
the garnishment of traffic balances due the defendant
from a connecting interstate carrier having a place of
business there." It will be observed that the facts of the
last case cited are also wholly dissimilar to the facts of
the case at bar.

Counsel for appellant argues that the principle
underlying all of the above cases is what they term "bal-
ance of convenience," which forbids a resident of the
State of Arkansas from placing a burden upon other

users of the appellant's express facilities in order to conserve his own convenience. Counsel contend that that principle applies here. But not so. This is a transitory action, and this court is thoroughly committed to the doctrine that a foreign corporation doing business in the State, and having designated an agent upon whom process may be served, may be sued on a transitory cause of action in any county in this State by serving summons on the designated agent outside the county in which it is brought. *Jacks* v. *Central Coal & Coke Co.,* 156 Ark. 211, 245 S. W. 483, and cases there cited. Moreover, we have early held that it is not against the public policy of this State to open her tribunals to foreign litigants where the controversy grows out of a transitory cause of action.

In *St. Louis & San Francisco Ry. Co.* v. *Brown,* 62 Ark. 254, at page 261, 35 S. W. 225, we said: ''The common-law rule is that, where the right of action is transitory in its nature, courts everywhere, when the defendant may be lawfully summoned to appear therein, have jurisdiction; and, when the suit is governed by statute of the State in which the injury is committed, courts of another State having similar laws, or where it is not contrary to its public policy, will enforce such laws, by the rule of comity.'' Citing cases. See also *St. L. I. M. & S. Ry. Co.* v. *Brown,* 67 Ark. 295-299, 54 S. W. 865; *St. L. etc. Ry. Co.* v. *Hesterly,* 98 Ark. 240-256, 135 S. W. 874; *St. L. etc. Ry. Co.* v. *Haist,* 71 Ark. 258-264, 72 S. W. 893; *Kansas City So. Ry. Co.* v. *Ingram,* 80 Ark. 269-272, 97 S. W. 55; *American Ry. Express Co.* v. *Davis,* 152 Ark. 259-265, 238 S. W. 50.

In the recent case of *National Liberty Ins. Co.* v. *Trattner, ante* p. 480, we held that an action could not be maintained in this State by a plaintiff residing and doing business in a foreign State against a foreign corporation authorized to do business in this State where the plaintiff's cause of action arose out of the State, the contract of insurance being made out of the State and the loss occurring out of the State. In that case, among other things, we

said: "The State has no especial interest in enforcing the right of citizens and residents of other States on causes of action arising outside of its boundaries against foreign corporations doing business in the State, but is chiefly interested in administering justice, under the forms of law, to all persons entitled to seek remedies in its courts, for protection and enforcement of their rights, and for redress of injuries and wrongs, promptly and without delay." That case is not in conflict, in principle, with the above cases and the case at bar, for there the plaintiff was a nonresident of the State, and left the State of his residence and likewise the State in which the defendant was domiciled and doing business and came to Arkansas simply for the purpose of using our judicial forum to carry on his litigation concerning a matter in which our State had not the remotest interest. In that case it did not appear that the nonresident insurance company had any property in this State. In such a state of facts we held that the rule of comity does not require that our courts of justice be put to the inconvenience and our citizens be put to the expense and annoyance of maintaining court machinery for a litigation wholly between nonresidents in which the people of the State could have no possible interest.

In *National Liberty Insurance Co.* v. *Trattner, supra,* we held that such course, under the facts of that case, would be against public policy. But certainly it accords with the public policy of the State to conserve the rights of its own citizens and to enable them to maintain any causes of action they may have against foreign corporations in our own tribunals, if service can be had upon them in this State. The appellant was doing business in this State, as a common carrier *"having lines of road running through the State."* At any rate, it can readily be seen that courts of this State might, in their discretion, entertain or refuse to entertain jurisdiction of transitory causes of action arising out of acts of negligence in another State by a nonresident plaintiff against a nonresident defendant, and yet not be inconsistent if

they entertained jurisdiction of such causes of action in favor of *resident plaintiffs* against nonresident defendants. Refusing jurisdiction in such cases to nonresident plaintiffs against nonresident defendants is one thing; refusing jurisdiction to resident plaintiffs against non-resident defendants is altogether a different thing.

The Court of Appeals of New York, in *Gregonis v. Philadelphia & Reading Coal & Iron Co.*, 235 N. Y. 152, 139 N. E. 223, 32 A. L. R. 1, says:

"The courts of this State may entertain jurisdiction of a negligence case arising in another State, whether the plaintiff is a resident or nonresident of this State. As to nonresidents, the courts have many times refused to entertain jurisdiction in the exercise of their discretion. As to a resident, however, a different question arises and a different law is applicable. Can the Supreme Court refuse to hear a case against a foreign corporation, brought by one resident of this State, where the tort occurred outside the State, and entertain jurisdiction for another resident upon the same state of facts? If it has discretion to refuse jurisdiction in the one instance, it must have a like discretion to entertain it in the other. Discretion implies a power to make a choice. We do not think that, as to a *resident of this State*, the court has any such discretion." See same case, 32 A. L. R., page 1, with copious annotations on every phase of the subject, and especially page 29, subdiv. 3, "Jurisdiction cannot be declined."

2. The contract of shipment contains the following:

"Except where the loss, damage, or injury complained of is due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, as conditions precedent to recovery, claims must be made in writing, to the originating or delivering carrier, within four months after delivery of property."

Under the express terms of the contract, the provision requiring written notice of damages cannot avail the appellant, because the testimony tended to prove as a fact that the berries were damaged in transit through the

carelessness or negligence of appellant in not properly icing the car. The positive testimony on this issue was sufficient to carry the same to the jury, and the verdict of the jury in favor of the appellee is conclusive here.

The court, at the request of the appellant, correctly instructed the jury that the burden was on the appellee to prove that the berries were in good condition when delivered to the defendant for shipment at Sarcoxie, Missouri, and that the damage to such berries, if any, resulted while the same were in defendant's possession as a common carrier. The court instructed the jury, at the instance of the appellee, that, if the berries were delivered to the appellant in good condition for shipment, and the same were in a decayed and damaged condition when they reached Detroit, the appellee had established a *prima facie* case of liability against the appellant, and that the burden was then on the appellant to show that the damaged condition of the berries was due to no negligence on its part. We believe the instructions were not in conflict, because the trial court did not, in effect, as a matter of law, tell the jury that the appellant, under the evidence, was guilty of negligence. The charge, taken as a whole, left the issue to the jury under the evidence, and, as we view it, instructed the jury that the burden on that issue was with the appellee on the whole case to establish negligence. It did not shift the burden on this issue to the appellant. If this is the correct view of the charge as a whole, it could not have misled the jury, was not prejudicial to the appellant, and was in conformity with the law as announced by this court in *C. R. I. & P. Ry. Co.* v. *Walker,* 147 Ark. 109, 227 S. W. 12; *Mo. Pac. Rd. Co.* v. *Bell,* 163 Ark. 284, 259 S. W. 745; *Mo. Pac. Ry. Co.* v. *Wellborn & Watts,* 170 Ark. 469, 280 S. W. 18, and cases there cited. Nor is the charge, as we thus construe it, in conflict with the decisions of the Supreme Court of the United States in *So. Ry. Co.* v. *Prescott,* 240 U. S. 632-640, 36 S. Ct. 469, and *C. & O. Ry. Co.* v. *Thompson Mfg. Co.,* 270 U. S. 416. 46 S. Ct. 318. In the last case the Supreme Court of the United States said:

"The respondent therefore had the burden of proving the carrier's negligence as one of the facts essential to recovery. When he introduced evidence to show delivery of the shipment to the carrier in good condition and its delivery to the consignee in bad condition, the petitioner (carrier) became subject to the rule applicable to all bailees, that such evidence makes out a *prima facie* case of negligence. The effect of the respondent's evidence was, we think, to make a *prima facie* case for the jury. But, even if this *prima facie* case be regarded as sufficient, in the absence of rebutting evidence, to entitle the plaintiff to a verdict, the trial court erred here in deciding the issue of negligence in favor of the plaintiff as a matter of law."

The trial court in the case at bar made no such mistake as that, but submitted the issue of negligence to the jury under the evidence, and, as we have said, placed the burden in the whole case on that issue upon the appellee.

There is no reversible error in the rulings of the trial court, and its judgment is therefore affirmed.