WAL-MART STORES, INC. *v.* UNITED STATES
FIDELITY & GUARANTY COMPANY, *et al.*

CA 01-1140                                    76 S.W.3d 895

Court of Appeals of Arkansas
Division III
Opinion delivered April 24, 2002

*Michael S. Cessna* and *Todd P. Guthrie*, for appellant.

*Clausen Miller P.C.*, by: *Edward M. Kay* (*pro hac vice*) and *Barbara I. Michaelides* (*pro hac vice*); *Warner, Smith & Harris, P.L.C.*, by:

*G. Alan Wooten*; and *Edward M. Kay* (*of counsel*), *James R. Swinehart* (*of counsel*), and *Barbara I. Michaelides* (*of counsel*), for appellees.

K AREN R. BAKER, Judge. This case involves the application of the doctrine of *forum non conveniens*. The Benton County Circuit Court dismissed a suit filed by Wal-Mart, whose corporate headquarters are in Benton County, on the ground that Pennsylvania would be a more convenient forum. The lawsuit involved Wal-Mart's attempt to seek insurance coverage from appellees United States Fidelity & Guaranty and Lexington Insurance Company for losses involving a Dickson City, Pennsylvania Wal-Mart store. We affirm the trial court's decision.

The following facts are taken from Wal-Mart's complaint and the insurance policies attached thereto. On December 6, 1996, a large boulder fell from a rock face behind the Dickson City Wal-Mart store, damaging the rear of the building. Geo–Science Engineering Company and Irwin & Leighton, a construction company, told Wal-Mart that a dangerous situation existed. Geo-Science reported that there were other unstable cracks in the rock face that could cause further damage. The company provided Wal-Mart with a list of remedial measures that could reduce the risk, such as relocating gas and electric utilities, moving overhead power lines underground, evacuating part of the store, and constructing a twenty-foot buffer against the rock face; however, the company stated that, if those measures could not be implemented within twelve to fifteen days, the store should be abandoned.

Wal-Mart decided to abandon the store. In January 1997, it resumed operations at a smaller, temporary location, and in March 1998, opened a new, permanent location. During this process, Wal-Mart allegedly incurred relocation expenses and experienced lost sales, which together totaled $4,822,790.95. Wal-Mart sought coverage from appellees, who had contracted to provide property loss and business interruption coverage to Wal-Mart for the period beginning April 1, 1996, and ending April 1, 1997.[1] Appellees

---

[1] The policies stated that their coverage territory included all fifty states, the District of Columbia, Puerto Rico, the Virgin Islands, and Canada. Despite this wide area of coverage, the policies contained no forum-selection clause or choice-of-law clause.

denied coverage, and Wal-Mart filed suit in Benton County Circuit Court.

Wal-Mart sought coverage, in part, based on the policies' "sue and labor" provision. That provision permitted Wal-Mart to "sue, labor, and travel" in order to defend or safeguard property in case of actual or imminent loss to the property, and it further provided that appellees would contribute to the expenses Wal-Mart incurred in doing so. According to a pleading later filed by Wal-Mart, appellees denied coverage because "the geological condition of the hillside did not threaten 'imminent loss or damage' to the building, and the relocation of retail operations . . . was not necessary to 'safeguard the insured property.' Additionally, each insurer has questioned whether the loss was fortuitous."

Appellees filed motions to dismiss Wal-Mart's complaint on the basis of *forum non conveniens*. Neither insurer attached affidavits, depositions, or other exhibits to its motion, but each argued that Pennsylvania was the more convenient forum for the lawsuit based on the following factors: 1) Pennsylvania is where the property loss occurred; 2) Pennsylvania is where witnesses such as the store employees, store manager, the owner of the store property, the engineering company that investigated the damage, and Dickson City municipal employees were located; 3) other lawsuits concerning the rock slide were pending in Pennsylvania; and 4) Pennsylvania law would likely apply. Wal-Mart responded by characterizing the lawsuit as one merely involving the construction of insurance agreements, and therefore the case would involve legal issues not dependent on a factual inquiry into the circumstances of the loss. It argued that the negotiation, delivery, and performance of the insurance policies occurred not in Pennsylvania but in Arkansas and New York (where Wal-Mart's insurance broker is located). The relevant witnesses, therefore, were not the Pennsylvania witnesses but Wal-Mart's corporate personnel who had knowledge of the claim. Wal-Mart also argued that dismissal of its complaint would deprive it — an Arkansas resident — of the right to litigate in the courts of its own state.

Attached to Wal-Mart's response were the affidavits of Rita Stephens, Wal-Mart's Director of Risk Management, and Dale

Snowden, Wal-Mart's Property Claims Manager. Stephens's affidavit set out the following pertinent information: Either she or her colleague, both of whom are located in Benton County, are required to ratify an insurance policy before coverage is bound; insurance premiums are paid from Wal-Mart's Benton County office; the insurance broker's representative involved in the adjustment of the claim would be willing to travel to Benton County for trial; and all records relating to the administration of insurance policies and coverage claims are maintained in Benton County. Snowden stated in his affidavit that he was responsible for investigating and preparing the claim in this case and that he and others in his department have knowledge of the circumstances attendant to the claim.

On August 10, 2001, a hearing was held on the motion to dismiss. Appellees' attorney told the court that the issues at trial would be fact-intensive and would involve such inquiries as whether Wal-Mart knew that there was an unsafe condition prior to the policy period, whether Wal-Mart should have done something to prevent the rock slide, whether there had been a history of rock slides at that location, and whether the danger involved was imminent. According to the attorney, persons located in Pennsylvania would have knowledge of such matters. He stated that Wal-Mart store personnel and employees had supplied information to the insurance companies regarding how much damage was caused by the falling rock and for how long the rock slides had been occurring. Additionally, the insurance adjuster who worked the claim was located in Pennsylvania, and he had visited the site numerous times, taking photographs and talking to witnesses. Further, the property owner, a Pennsylvania company, would have knowledge about the condition of the hillside and whether any measures had been undertaken to prevent a rock slide. The attorney also mentioned that the engineering and construction companies named in Wal-Mart's complaint were located in Pennsylvania, as were two other engineers who had given opinions about the situation. Further, he said, the city council of Dickson City also had an interest in the matter, and the council's consulting engineer had knowledge regarding the hill in question.

Following the hearing, the trial judge granted appellees' motion. The judge stated that he was reluctant to deny an Arkansas citizen access to the state's courts and that he was hesitant to require Wal-Mart to litigate its claim elsewhere. However, he found that, because the case was "heavily burdened with factual issues," it would be more convenient for the trial to be held in Pennsylvania, where the fact witnesses were located. Further, he noted that it would be a minor inconvenience to require Wal-Mart's corporate employees to make the trip to Pennsylvania as compared with attempting to bring the Pennsylvania witnesses to Benton County. He referred to the fact that "the impact on the parties trying to litigate this and take depositions and compel attendance of numerous witnesses to the court just to take depositions, . . . would be an overwhelming burden and a needless burden when there is a court in Pennsylvania that could satisfy all of those needs."

The judge also declared that, while he was awed by the prospect of having Wal-Mart litigate all its insurance cases in Benton County, that prospect was not "much of a factor" because it had yet to materialize. Likewise, he did not consider the choice-of-law question, predicting that it would be answered later in the case.

█ *Forum non conveniens* is a doctrine that allows a trial court to decline to hear a case, even though it has jurisdiction to do so. *See Harvey v. Eastman Kodak Co.*, 271 Ark. 783, 610 S.W.2d 582 (1981). The doctrine is applied when it would be in the interests of the parties and the public to try the case in another forum. *See generally Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947).

██ The Arkansas Supreme Court formally recognized the doctrine of *forum non conveniens* in *Running v. Southwest Freight Lines, Inc.*, 227 Ark. 839, 303 S.W.2d 578 (1957), *overruled on other grounds, Malone & Hyde, Inc. v. Chisley*, 308 Ark. 308, 825 S.W.2d 558 (1992). The doctrine was also recognized by the Arkansas legislature in Act 101 of 1963, which is codified at Ark. Code Ann. § 16-4-101(D) (Repl. 1999):

INCONVENIENT FORUM. When the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just.

Arkansas courts have utilized the following factors to determine whether a case should be moved to a more convenient forum: 1) the convenience to each party in obtaining documents or witnesses; 2) the expense involved to each party; 3) the condition of the trial court's docket; and 4) any other facts or circumstances affecting a just determination. *Life of America Ins. Co. v. Baker-Lowe-Fox Ins. Marketing, Inc.*, 316 Ark. 630, 873 S.W.2d 537 (1994). Our courts have recognized that we will reverse a trial court's ruling on a *forum non conveniens* question only if the court abuses its discretion. *Id.*; *Country Pride Foods, Ltd. v. Medina & Medina*, 279 Ark. 75, 648 S.W.2d 485 (1983).

■ We hold that there was no abuse of discretion here. As the trial court understood, we should be reluctant to deprive an Arkansas resident of access to its home forum. However, a resident plaintiff's choice of forum is not the only matter to be considered in making a *forum non conveniens* decision, although it is of "high significance." *See generally Koster v. Lumbermen's Mut. Cas. Co.*, 330 U.S. 518, 525 (1947). We note that a plaintiff such as Wal-Mart, who has chosen to acquire property and engage in extensive business dealings in numerous locations throughout the country, might be expected, more than the average plaintiff, to find that its resident forum is not convenient for all purposes.[2]

■ Further, we find no fault with the trial court's ruling that the location of the Pennsylvania witnesses and the relative

---

[2] In *Scottish Union & National Insurance Co. v. Hutchins*, 188 Ark. 533, 66 S.W.2d 616 (1934) and *American Railway Express Co. v. H. Rouw Co.*, 173 Ark. 810, 294 S.W. 401 (1927), Arkansas plaintiffs were permitted to sue foreign insurers in an Arkansas court, even though the property loss occurred in another state. However, both cases were decided before we recognized the doctrine of *forum non conveniens* and were approached from the standpoint of whether the trial court had jurisdiction rather than whether the chosen forum was convenient.

Additionally, Wal-Mart has cited cases from other jurisdictions in which plaintiffs sued insurers in the plaintiffs' home forum, despite the fact that the loss occurred elsewhere. We do not find those holdings persuasive, given the facts of this case.

inconvenience that would ensue from attempting to compel their attendance in Benton County weigh in favor of having the trial in Pennsylvania. The court made a determination, which we think is supportable based on experience and logic, that the issues in Wal-Mart's lawsuit would involve not just legal questions, but factual questions as well. While the testimony of those corporate personnel who executed the insurance contracts and managed the claims process could be of some relevance, the testimony of those persons in Pennsylvania who were employed by the store and who inspected the hillside and rendered opinions on its condition appear highly relevant to the question of whether coverage was owed in this case and, if so, to what extent. Several cases have recognized that the location of witnesses is a significant factor viewed by the courts in making a *forum non conveniens* determination. *See, e.g., Kamel v. Hill-Rom Co.*, 108 F.3d 799 (7th Cir. 1997); *Kempe v. Ocean Drilling & Expl. Co.*, 876 F.2d 1138 (5th Cir. 1989), *cert. denied*, 493 U.S. 918 (1989); *TV-3, Inc. v. Royal Ins. Co. of Amer.*, 28 F. Supp. 2d 407 (E.D. Tex. 1998); and *So-Comm, Inc. v. Reynolds*, 607 F. Supp. 663 (N.D. Ill. 1985). *See also Sandvik, Inc. v. Contenental Ins. Co.*, 724 F. Supp. 303 (D.N.J. 1989) (case transferred to site of loss where coverage issues involved more than mere contractual interpretation and would require reference to "site-specific" facts).

██ ██ A trial court abuses its discretion when it acts improvidently or arbitrarily in making a finding. *See Bonds v. Lloyd*, 259 Ark. 557, 535 S.W.2d 218 (1976). *See generally Hogan v. Holliday*, 72 Ark. App. 67, 31 S.W.3d 875 (2000), (holding that a trial court abuses its discretion by acting thoughtlessly and without due consideration). The trial court in this case gave due consideration to Wal-Mart's status as a resident plaintiff, thoughtfully analyzed the potential issues and witnesses in the case, and carefully weighed the relative convenience to the parties and the witnesses. Under these circumstances, we cannot say that an abuse of discretion occurred.

Wal-Mart also argues that the record before the trial court did not afford an adequate evidentiary basis for a ruling on the *forum non conveniens* question. In particular, it points to the fact that appellees did not rely on affidavits or other evidence to sup-

port their motion to dismiss, but on the pleadings, insurance policies, and representations of counsel at the hearing.

In *Running v. Southwest Freight Lines, Inc., supra,* the case that first recognized the doctrine of *forum non conveniens* in Arkansas, the supreme court held that the parties' pleadings, which showed only the residence of the parties and where the cause of action arose, did not contain sufficient information to allow the trial court to exercise its discretion on the convenient forum question. However, when *Running* was decided, *forum non conveniens* was a novel concept in Arkansas, and our courts had not yet declared the factors that a trial court should consider. Further, the pleadings in this case contain considerably more information than those in *Running.* Additionally, the record contains the insurance policies at issue and states the coverage issues involved. Also, appellees identified potential witnesses in the case, and Wal-Mart did not dispute either the existence of those witnesses, their location, or the matters to which they might testify. In *Country Pride Foods Ltd. v. Medina & Medina, supra,* the supreme court likewise held that the record should contain facts upon which the trial court bases its decision. However, that case is also distinguishable because there, the trial court raised the issue of *forum non conveniens* sua sponte. Therefore, it was necessary to remand the case to discover the basis for the court's decision.

It must be remembered that, in most instances, the *forum non conveniens* determination is made at the dismissal stage, before a lawsuit is fully developed; were it not, there would be little point in having the doctrine because the parties would be required to begin the litigation process in what might prove to be an inconvenient forum. So, while the moving party has the burden of showing the trial court why the chosen forum is not convenient, we do not read *Running* and *Country Pride Foods* to say that extensively developed proof is required, especially when the authenticity of the matters placed before the court is not seriously called into question by the opposing party. Under the circumstances of this particular case, the record was sufficient to allow the trial court to exercise its discretion.

Affirmed.

GRIFFEN and VAUGHT, JJ., agree.